## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACHAEL TOUSSAINT, ESTE PALLAS, PETRICE THOMPSON, BERTRAM SCOTT,, J. GARCIA, D. CHONG, ANGELA RICHARDSON, THERESA CROSSMAN, TRUDY SHERMAN, LINDON BAIN, M. MOSEJCZUK, WILLIS HARRIS, NICOLE HUDSON, TANYEKA BESWICK, TAMARA ANGLIN, JEAN-WILLY BAPTISTE, BEVERLY WILLIAMS, CAROL BRYAN, STEPHANIE PAGANO, SHANLYS BYFIELD, N. JACK, HEDREN LECKIE, RANDI TUDY-JONES, PAMELA  PHILLIP-RIVERA, KRISTY TANTILLO, CHERYL THOMPSON, MARIE PAULINE SALVIA, MARIEJO BARRIE, PASCAL MARK, KIMBERLY GREENBERG, MARYJO BARRIE, MAY JOURNET, AYANNA ALEXANDER, EDNA RODOLFO, KAREN JAMES, NORA SAMMON, NICOLE HUDGSON-JACK, MARIE BISH, individually and on behalf of similarly situated individuals, | |
| Plaintiffs, | |
| v. | **COMPLAINT** **PROPOSED CLASS ACTION** |
| HEALTHCARE ASSOCIATION OF NEW YORK STATE, INC., NEW YORK BAR ASSOCIATION, BROOKDALE UNIVERSITY HOSPITAL AND MEDICAL CENTER, MONTEFIORE HEALTH SYSTEM, MONTEFIORE MEDICAL CENTER, ONE BROOKLYN HEALTH SYSTEM, THE BROOKLYN HOSPITAL CENTER, UNITED METHODIST HOMES, STATEN ISLAND UNIVERSITY HOSPITAL NORTHWELL HEALTH, INC., NEW YORK PRESBYTERIAN HOSPITAL, NEW YORK PRESBYTERIAN HEALTHCARE SYSTEM, INC., MT. SINAI HEALTH SYSTEM, BROOKHAVEN REHAB & HEALTH CARE CENTER, AND NEW YORK CITY HEALTH AND HOSPITALS CORPORATION (BELLEVUE) (WOODHULL HOSPITAL) BAYLEYH SETON HOSPITAL, BELLEVUE HOSPITAL CENTER BROOKDALE HOSPITAL MEDICAL CENTER BROOKLYN HOSPITAL CENTER - CALEDONIAN AND DOWNTOWN CAMPUSES GOOD SAMARITAN HOSPITAL MEDICAL CENTER FLUSHING HOSPITAL MEDICAL CENTER, HARLEM HOSPITAL CENTER, HENRY J. CARTER SPECIALTY HOSPITAL, HOSPITAL FOR JOINT DISEASES HOSPITAL FOR SPECIAL SURGERY | **INDEX No.: _____** |

INTERFAITH MEDICAL CENTER, JACOBI MEDICAL
CENTER, KINGS COUNTY HOSPITAL CENTER
KINGSBROOK JEWISH MEDICAL CENTER, LENOX
HILL HOSPITAL, LONG ISLAND COLLEGE
HOSPITAL, MAIMONIDES MEDICAL CENTER
MAIMONIDES MIDWOOD COMMUNITY HOSPITAL
MEMORIAL HOSPITAL FOR CANCER AND ALLIED
DISEASES, METROPOLITAN HOSPITAL CENTER
MOUNT SINAI BETH ISRAEL, MOUNT SINAI BETH
ISRAEL BROOKLYN, MOUNT SINAI HOSPITAL
MOUNT SINAI HOSPITAL - MOUNT SINAI
HOSPITAL OF QUEENS, MOUNT SINAI
MORNINGSIDE, NEW YORK -
PRESBYTERIAN/QUEENS, NEW YORK
PRESBYTERIAN HOSPITAL - NEW YORK WEILL
CORNELL CENTER, NY EYE AND EAR INFIRMARY
OF MOUNT SINAI, NYC HEALTH +
HOSPITALS/SOUTH BROOKLYN HEALTH
NYU LANGONE HOSPITALS, RICHMOND
UNIVERSITY MEDICAL CENTER, ROCKEFELLER
UNIVERSITY HOSPITAL, STATEN ISLAND
UNIVERSITY HOSPITAL - NORTH
UNIVERSITY HOSPITAL OF BROOKLYN,
WOODHULL MEDICAL AND MENTAL HEALTH
CENTER WYCKOFF HEIGHTS MEDICAL CENTER
DOES 1-20

                  Defendant

## **INTRODUCTION**

1. This is a civil rights wrongful discharge action brought by a proposed class of health care worker Plaintiffs pursuant to 29 U.S.C. §660 Subsection 11(c)(1) of the Occupational Safety and Health Act of 1970 ("OSH Act") for the discriminatory discharge of Plaintiffs for exercising their right to object to taking the Covid-19 vaccine/immunization on religious grounds, which is a fundamental protected under 29 U.S.C. §669 Subsection 20(a)(5) of the OSH Act for which Plaintiffs seeks monetary damages, job reinstatement, backpay, compensatory, and punitive damages under the OSH Act private right of action contained in 29 U.S.C. §660 Subsection 11(c)(1) & (2) of the OSH Act.

2

2. This civil rights action is also brought under

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter that presents a federal question pursuant to 28 U.S.C. §§ 1331 and this matter seeks to recover of damages, equitable and other relief under an Act of Congress providing for the protection of civil rights pursuant to 28 U.S.C. §1343(3) &(4), which includes the deprivation of civil rights protected under 29 U.S.C. §669 Subsection 20(a)(5) of the OSH Act, which expressly states under 29 U.S.C. §660 Subsection 11(c)(2) of the OSH Act that any such action (for deprivation of an OSH Act protected civil right) the "United States district courts shall have jurisdiction."

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because two of the defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

5. Claims for violations of the New York City Human Rights Law pursuant to Admin. Code § 8-101 – §107 may be brought by an aggrieved party and heard by this court pursuant to Admin. Code § 8-109.

### PARTIES

A. **Plaintiffs**

6. Plaintiff, R. Toussaint is an African-American female Registered Nurse who was employed over 11 years by Defendant Brookdale Hospital and Medical Center and One Brooklyn Health System in Brooklyn, New York (hereafter "Brookdale").

7. On or around September 16, 2021, Defendant Brookdale notified R. Toussaint that she was required to submit to and receive the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and/or §PHL 2.61 and/or as a

mandate based on Brookdale's employment policy announced by Chief Executive Officer Lucinda "Cindy" Baier who said that the Covid-19 vaccine is the appropriate measures to help protect against the spread of the evolving COVID-19 as part of infection control to protect the health and well-being of residents and associates during the Covid-19 Pandemic. (collectively the "Vaccine").

8.   R. Toussaint submitted to Brookdale several written objections to taking Vaccine based on religious grounds because her faith required that she object to trusting in a vaccine to save her from death caused by disease and faith her requires her to trust God and trust Gods Biblical Plant-Based Lifestyle Medicine wherein the Bible says in Revelation 22:2 that "the leaves of the trees are for the healing of the nations" and she asked to purchase her own OSHA approved Powered Air Purifying Respirator (PAPR) safety respirator mask so she could remain unvaccinated, keep her job while also maintaining a safe workplace for patients and co-workers.

9.  Because R. Toussaint exercised her right to object to the taking the Vaccine on religious grounds protected by 29 U.S.C. §669 Subsection 20(a)(5) of the OSH Act, Defendant Brookdale terminated her on December 31, 2021.

10. Before her termination, from September 2021, until December 16, 2021, R. Toussaint adhered to Brookdale's Covid-19 workplace safety requirements which included, wearing a surgical type mask, washing-of hands and submitting to periodic Covid-19 testing.

11. At no time after R. Toussaint objected to taking the Vaccine did Defendant Brookdale provide R. Toussaint an OSHA approved PAPR mask that is 99.97% effective at preventing employee exposure to any airborne hazard, including the airborne viral hazard that causes Covid-19.

12. Defendant Brookdale failed to provide and denied R. Toussaints request to purchase her own PAPR so she could continue to work safely.

13. On or around December 17, 2021, Defendant Brookdale placed R. Toussaint on leave without pay because she continued to refuse to submit to the Mandate and she was informed that if she did not get the Covid vaccine by 5pm December 31, 2021 she would be terminated.

14. On December 31, 2021. R. Toussaint was terminated because she objected to submit to take the Covid-19 Vaccine manufactured by either Moderna, Johnson & Johnson or Pfizer as required by Defendant Brookdale and she has remained unvaccinated ever since and is alive today.

15. Since her termination, R. Toussaint has sought employment at other healthcare facilities in New York State and has not been able to find any healthcare job that does not require Covid-19 vaccination. (See R. Toussaint's Affidavit at for details **Exhibit 16**)

16. P. Thompson was also employed by Defendant Brookdale within the Schulman & Schachne Institute for Nursing and provided face to face patient care as a Certified Nurse's Aide. She has worked at Brookdale for over 27 years.

17. P. Thomas is an African-American female Seventh-Day Adventist Bible Believer who follows the Biblical Plant-based Lifestyle Medicine and uses plant-based food and herbs as medicine.

18. On or around September 16, 2021, Defendant Brookdale notified P. Thompson that she was required to submit to and receive the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

19. P. Thomas submitted several written objections to take the Covid-19 Vaccine based on religious grounds religious grounds because her faith required that she object to trusting in a vaccine to save her from death caused by disease and faith her requires her to trust God and trust Gods Biblical Plant-Based Lifestyle Medicine wherein the Bible says in Revelation 22:2 that "the leaves of the trees are for the healing of the nations" and she requested to be allowed

to purchase her own Powered Air Purifying Respirator (PAPR) respirator mask so she could remain unvaccinated, keep her job while also maintaining a safe workplace for patients and co-workers.

20. Before her termination, from September 2021, until December 16, 2021, P. Thomas adhered to Brookdale's Covid-19 workplace safety requirements, which included, wearing a surgical mask, washing-of hands and submitting to periodic Covid-19 testing.

21. At no time after P. Thomas objected to the Brookdale's mandate that she take a Covid-19 Vaccine did Defendant Brookdale provide P. Thomas an OSHA approved PAPR respiratory mask safety equipment or any other respiratory safety equipment that is 99.97% effective at preventing employee exposure to any airborne hazard, including the airborne viral hazard that causes Covid-19.

22. Neither did Defendant Brookedale permit P. Thomas to purchase her own PAPR safety equipment in order to keep her job.

23. On December 17, 2021, Defendant Brookdale placed P. Thomas on leave without pay because she continued to object submit to the Covid-19 Vaccine Mandate and she was informed that if she did not get the Covid-19 Vaccine by 5pm December 31, 2021 she would be terminated.

24. On December 31, 2021, P. Thomas was terminated because she continued to object to submit to the Covid-19 Vaccine Mandate required by Defendant Brookdale and she has remained unvaccinated ever since and is alive.

25. Since her termination, P. Thomas has sought employment at other healthcare facilities in New York State and has not been able to find any healthcare job that does not require Covid-19 vaccination.  (See P. Thomas Affidavit at **Exhibit 17** for details)

26. E. Pallas is a Jewish woman and a registered dietician who worked for Defendant Brookdale for approximately 5 years.

27. E. Pallas could perform the essential functions of her job entirely remote.

28. On or around September 16, 2021, Defendant Brookdale demanded that A. Pallas submit to receive the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

29. On September 18, 2021, A. Pallas submitted a request and appeal(s) for an exemption from the Mandate based on religious grounds in order to remain unvaccinated.

30. On or around November, 2021, A. Pallas' exemption requests and appeals were rejected by Defendant Brookdale.

31. A. Pallas also requested that she be allowed to work her job remotely because the essential functions of her job could be performed remote.

32. A. Pallas also requested Defendant Brookdale to provide her with an OSHA approved PAPR respirator safety mask so she could continue to perform her job, and she offered to pay for the PAPR, if remote work was not permitted.

33. Defendant Brookdale denied A. Pallas any exemption from the Mandate and refused to allow her to work remote and refused to provide or allow her to purchase a PAPR respirator mask so that she could continue to work her job safely.

34. Between September 16, 2021 until December 16, 2021, E. Pallas abided by Defendant Brookdale's Covid-19 workplace safety requirements which included the wearing of a surgical type mask, washing her hands and she submitted to periodic testing.

35. On December 17, 2021, E. Pallas was placed on leave without pay because she continued to request to remain unvaccinated and was informed that if she did not receive the Covid vaccine by December 31, 2021 that she would be terminated at 5pm on December 31, 2021.

36. E. Pallas was terminated on December 31, 2021 because she remained unvaccinated.

37. Since her termination, E. Pallas sought employment at other healthcare facilities in New York State and has not been able to find any job that does not require Covid vaccination.

38. E. Pallas had to move out of the State of New York to obtain a lower paying job where she currently works. (See Affidavit of E. Pallas at **Exhibit 18** for details)

39. J. Garcia is a Latina female Bible believer who worked for Defendant Brookdale and had patient and co-worker contacts.

40. On or around September 16, 2021, Brookdale notified J. Garcia that she was required to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

41. J. Garcia submitted requests and an appeal(s) to obtain an exemption from the Mandate based on religious grounds and she requested an OSHA approved PAPR safety equipment so she could continue to work her job that required face to face patient contact in order to perform her job.

42. Defendant Brookdale denied J. Garcia any exemption from the Mandate and refused to provide her with the OSHA approved PAPR safety mask equipment and neither did Defendant Brookdale approve of J. Garcia purchasing her own PAPR so she could continue to work her job.

43. During the period between September 16 and December 16, 2021, J. Garcia adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and she submitted to the required periodic testing.

44. On December 17, 2021, J. Garcia was placed on leave without pay because she continued to refuse to submit to the Mandate and was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

45. On December 31, 2021, Defendant Brookdale terminated J. Garcia from her job for refusing to submit to the Mandate.

46. Since her termination, J. Garcia has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.

47. A. Richardson is an African-American, female Bible Believer who worked for Defendant Brookdale over 22 year as a Patient Services Associate who could work her job entirely remote.

48. On or around September 16, 2021, Brookdale notified A. Richardson that she was required to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

49. A. Richardson submitted requests and an appeal(s) to obtain an exemption from the Mandate based on religious grounds and she requested an OSHA approved PAPR safety equipment so she could continue to work her job and she requested to work her job remotely because she was only required to set appointments for patients that could be done remotely.

50. Defendant Brookdale denied A. Richardson any exemption from the Mandate and refused to provide her with the OSHA approved PAPR safety mask equipment and neither did Defendant Brookdale approve of A. Richardson purchasing a PAPR so she could continue to work her job safely.

51. Defendant Brookdale also refused to allow A. Richardson to perform her job remotely so she could continue to perform her job which could be performed remotely.

52. During the period between September 16 and December 16, 2021, A. Richardson adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and she submitted to the required periodic testing.

53. On or around December 17, 2021, A. Richardson was placed on leave without pay because she continued to refuse to submit to the Mandate and was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

54. On December 31, 2021, Defendant Brookdale terminated A. Richardson from her job for refusing to submit to the Mandate.

55. Since her termination, A. Richardson has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.  (See Affidavit of A. Richardson at **Exhibit 19**)

56. T. Crossman is an African-American female Bible Believer who worked for Defendant Brookdale for over 11 years working as a Staff Occupational Therapist (OTR) that provided face to face patient care.

57. On or around September 16, 2021, Brookdale notified T. Crossman that she was required to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

58. T. Crossman submitted requests and an appeal(s) to obtain an exemption from the Mandate based on religious grounds and she requested an OSHA approved PAPR safety equipment so she could continue to work her job safely without losing her job.

59. Defendant Brookdale denied T. Crossman any exemption from the Mandate and refused to provide her with the OSHA approved PAPR safety mask equipment.

60. During the period between September 16 and December 16, 2021, T. Crossman adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and she submitted to the required periodic testing.

61. On or around December 17, 2021, T. Crossman was placed on leave without pay because she continued to refuse to submit to the Mandate and was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

62. On December 31, 2021, Defendant Brookdale terminated T. Crossman from her job for refusing to submit to the Mandate.

63. Since her termination, T. Crossman has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.

64. D. Chery is an African-American female Bible Believer who worked for Defendant Brookdale working as Patient Services Association for over 19 years and who could perform the essential functions of the job entirely remote.

65. On or around September 16, 2021, Brookdale notified D. Chery that she was required to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

66. D. Chery submitted requests and an appeal(s) to obtain an exemption from the Mandate based on religious grounds and she requested an OSHA approved PAPR safety equipment so she could continue to work her job safely without losing her job.

67. Defendant Brookdale denied D. Chery any exemption from the Mandate and failed to provide her with an OSHA approved PAPR safety mask equipment or any respiratory safety equipment that provided at least 99.7% efficacy in shielding workers from any airborne hazard including the airborne virus that causes Covid-19.

68. During the period between September 16 and December 16, 2021, D. Chery adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and she submitted to the required periodic testing.

69. On or around December 17, 2021, D. Chery was placed on leave without pay because she continued to refuse to submit to the Mandate and was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

70. On December 31, 2021, Defendant Brookdale terminated D. Chery from her job for refusing to submit to the Mandate.

71. Since her termination, D. Chery has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.   (See Affidavit of D. Chery at **Exhibit 21**)

72. Plaintiff L. Bain is an African-American Bible believing male Seventh Day Adventist who worked for Defendant Brookdale for over 22 years as the lead plumber in the Engineering Department that did not provide direct face to face patient care.

73. On or around September 16, 2021, Brookdale notified L. Bain that he was required to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

74. L. Bain submitted requests and an appeal(s) to obtain an exemption from the Mandate based on religious grounds and he requested an OSHA approved PAPR safety equipment so he could continue to work his job safely.

75. Defendant Brookdale denied L. Bain any exemption from the Mandate and failed to provide him with an OSHA approved PAPR safety mask equipment or any respiratory safety equipment that provided at least 99.7% efficacy in shielding workers from any airborne hazard including the airborne virus that causes Covid-19.

76. During the period between September 16 and December 16, 2021, L. Bain adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and he submitted to the required periodic testing.

77. On or around December 17, 2021, L. Bain was placed on leave without pay because he continued to refuse to submit to the Mandate and was informed that if he did not get vaccinate per the Mandate by December 31, 2021, he would be terminated at 5pm on December 31, 2021.

78. On December 31, 2021, Defendant Brookdale terminated L. Bain from his job for refusing to submit to the Mandate.

79. Since his termination, L. Bain has sought employment at other healthcare facilities in New York State to remain in his career and has not been able to find any healthcare job that does not require Covid vaccination.

80. P. Phillip-Rivera is a Bible believing Latina woman who worked for Defendant Brookdale for over three (3) years in Health Information Management, which is a job that the essential functions of the job could be performed remotely because Brookdale stores patient medical records as electronic records.

81. On or around September 16, 2021, Brookdale notified P. Phillips-Rivera that she was required to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

82. P. Phillips-Rivera submitted requests and appeal(s) to obtain an exemption from the Mandate based on religious grounds and she requested to work remotely or alternative to obtain an OSHA approved PAPR safety equipment so she could continue to work her job safely.

83. Defendant Brookdale denied P. Phillips-Rivera any exemption from the Mandate and failed to provide her with an OSHA approved PAPR safety mask equipment or any respiratory safety equipment that provided at least 99.7% efficacy in shielding workers from any airborne hazard including the airborne virus that causes Covid-19.

84. During the period between September 16 and December 16, 2021, P. Phillips-Rivera adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and he submitted to the required periodic testing.

85. On or around December 17, 2021, P. Phillips-Rivera was placed on leave without pay because she continued to refuse to submit to the Mandate and was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

86. On December 31, 2021, Defendant Brookdale terminated P. Phillips-Rivera from her job for refusing to submit to the Mandate.

87. Since her termination, P. Phillips-Rivera has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.

88. At all relevant times Defendant Brookdale employed all Plaintiffs, Brookdale failed to participate in "good faith" cooperative dialogue with Petitioners to discuss all possible reasonable accommodations that would allow Petitioners to remain on the job on their jobs in their unvaccinated status and not be a risk to others.

89. D. Chong is a female Seventh-Day Adventist Bible believer worked over 22 years for Defendant The Brooklyn Hospital Center, One Brooklyn Hospital (TBHC) as a Physical Therapist Assistant with face to face patient contact.

1. At all relevant time Respondent TBCH demanded that D. Chong get vaccinated since around September 2021, D. Chong submitted requests and appeal(s) on October 22, 2021 to remain unvaccinated and she requested the reasonable accommodation of working using a PAPR mask that she offered to pay for and she agreed to periodic Covid testing so that she could continue to work in your position in her unvaccinated status.

2. D. Chong was placed on leave without pay on November 23, 2021 because she remained unvaccinated and was informed that she would be terminated on December 1, 2021, if she did not get vaccinated.

3. On December 1, 2021, D. Chong was terminated because she continued to remain unvaccinated and has since sought employment at other healthcare facilities in New York State and has not been able to find any job that does not require Covid vaccination and that will provide any accommodation to an unvaccinated person seeking to be hired.

15

4. TBHC terminated D. Chong based on her "perceived disability" wherein she is perceived by Respondent BHC as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated and her choice to rely on her Biblical religious medical practice of whole plant-based lifestyle medicine wherein for 30 years she has not consumed any animal products, nor consumed any alcohol, nor smokes and she tries to consume mostly organic Non-GMO plants and relies almost exclusively on herbal remedies consistent with her religious Biblical medical practice of plant-based lifestyle medicine, which includes following THE TEN LAWS of health found in the Bible in Genesis 1:29, 30, 3:17-19, 9:4, Ex. 15:26, Ex. 16:15, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, Num 35:33, 1 Cor 3:16-17, 3 John 1:2, Rev. 22:2, to name a few.

5. Respondent TBHC denied D. Chong any and all reasonable accommodations that would have allowed her to remain on her job in her unvaccinated status, including the accommodations of using a Powered Air Purifying Respirator (PAPR) mask (that she would pay for), testing periodically and relying on her religious medical practices so that she could continue to work and not be a risk to patients, co-workers or to herself.

6. TBHC also failed to participate in "good faith" cooperative dialogue with D. Chong to discuss all possible reasonable accommodations that would allow D. Chong to remain on the job in her unvaccinated status and not be a risk to others. (See Affidavit of D. Chong at **Exhibit 22**)

7. T. Sherman is a female African-American Seventh-day Adventist Bible Believer worked for United Methodist Homes (Hill Top Campus) (UMH) as a Certified Nursing Assistant.

8. At all relevant time Respondent UMH demanded that T. Sherman get vaccinated, T. Sherman submitted requests and/or an appeal(s) to remain unvaccinated and to be accommodated.

9. T. Sherman was terminated on September 20, 2021, by Respondent UMH based on her "perceived disability" wherein she was perceived by UMH as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated and her choice to rely on her

Biblical religious medical practice wherein she does not consume unclean animal products, nor consumes products that defile her body, nor smokes and she relies on natural remedies consistent with her religious Biblical medical practices found in the Bible at Genesis 1:29, 30, 3:17-19, 9:4, Ex. 15:26, Ex. 16:15, Lev. Ch. 11, Ch. 13, Lev. 17:11,  Ps. 103:3, 104:14, Ps 78:18, Num 6:3, and Num 35:33, to name a few.

10. Respondent UMH refused to provide T. Sherman any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status, including the accommodations of allowing her to either perform her job remotely, or to allow her to use a Powered Air Purifying Respirator (PAPR) mask (that she would pay for), testing periodically and relying on her religious medical practices so that she could continue to work and not be a risk to patients, co-workers or to herself.

11. UMH also failed to participate in good faith "cooperative dialogue" with T. Sherman to discuss all possible reasonable accommodations that would allow T. Sherman to remain on the job in her unvaccinated status and not be a risk to others. (See Affidavit of T. Sherman at **Exhibit 23**)

12. L. Bain is a male African-American Seventh-Day Adventist Bible Believer who worked for Respondent Brookdale as a plumber who could perform the essential functions of his job with very little contact with patients, and co-workers.

13. At all relevant time Respondent Brookdale demanded that L. Bain get vaccinated, L. Bain submitted requests or an appeal(s) to remain unvaccinated while performing his job which did not require face to face interaction with patients.

14. On December 17, 2021, L. Bain was placed on leave without pay because he remained unvaccinated and was told that if he did not get vaccinated by 5pm on December 31, 2021, that he would be terminated.

15. On December 31, 2021, Respondent Brookdale terminated L. Bain because he remained unvaccinated and since the termination, he has sought other jobs in healthcare facilities and has not found a job that does not require vaccination or that will provide an accommodation for the unvaccinated so that he could be hired.

16. Respondent Brookdale terminated L. Bain based on his "perceived disability" wherein he is perceived by Brookdale as being more likely to contract and spread Covid-19 due to his decision to remain unvaccinated and his choice to rely on his Biblical religious medical practice wherein he does not consume unclean animal products, nor consumes products that defile his body, nor smokes and he relies more on natural remedies consistent with his religious Biblical medical practices found in the Bible at Genesis 1:29, 30, 3:17-19, 9:4, Ex. 15:26, Ex. 16:15, Lev. Ch. 11, Ch. 13, Lev. 17:11, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, and Num 35:33, to name a few.

17. Respondent Brookdale refused to provide L. Bain any and all reasonable accommodations that would have allowed him to remain on his job in his unvaccinated status, including the accommodations of allowing him to either perform his job remotely, or to allow him to use a Powered Air Purifying Respirator (PAPR) mask (that she would pay for), testing periodically and relying on his religious medical practices so that he could continue work and not be a risk to patients, co-workers or to himself.

18. M. Mosejczuk is a female, African-American Bible Believer employee of Respondent Brookdale.

19. At all relevant time Respondent Brookdale demanded that M. Mosejczuk get vaccinated, M. Mosejczuk submitted requests or an appeal(s) to remain unvaccinated while performing his job which did not require face to face interaction with patients.

20. M. Mosjczuk was placed on leave without pay on December 17, 2021 because she remained unvaccinated and was informed that if she did not get vaccinate she would be terminated at 5pm on December 31, 2021, which did occur.

21. M. Mosjczuk has been terminated as of December 31, 2021 because she remained unvaccinated and has since sought employment at other healthcare facilities in New York State and has not been able to find any job that does not require Covid vaccination and that will provide any accommodation to an unvaccinated person seeking to be hired.

22. At all relevant times, Respondent Brookdale refused to provided M. Mosjczuk reasonable accommodations based on her "perceived disability" wherein she was perceived by Brookdale as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated and her choice to rely on her Biblical religious medical practice wherein she does not consume unclean animal products, nor consumes products that defile her body, nor smokes and she relies on natural remedies consistent with her religious Biblical medical practices found in the Bible at Genesis 1:29, 30, 3:17-19, 9:4, Ex. 15:26, Ex. 16:15, Lev. Chpt. 11, Chpt. 13, Lev. 17:11, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, and Num 35:33, to name a few.

23. Respondent Brookdale refused to provide M. Mosejczuk any and all reasonable accommodations that would  allow her to remain on her job in her unvaccinated status, including the accommodations of allowing her to either perform her job remotely, or to allow her to use a Powered Air Purifying Respirator (PAPR) mask (that she would pay for), testing periodically and relying on her religious medical practices so that she could continue to work and not be a risk to patients, co-workers or to herself.

24. S. Pagano is a female, African-American Christian believer and Licensed Master Social Worker who worked for Staten Island for over two (2) years as a Case Manager responsible

for managing the administration of patient admissions, discharge and care for 55 to 90 patients at a time.

25. At all relevant time Respondent Staten Island demanded that S. Pagano get vaccinated, P. Pagano submitted requests or an appeal(s) to remain unvaccinated while performing her job which could have been performed remotely.

26. On October 10, 2021, S. Pagano was terminated by Respondent Staten Island based on her "perceived disability" wherein she was perceived by Staten Island as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated because she had already suffered illness from the virus that causes Covid-19 in August 26, 2021 and had acquired natural immunity. S. Pagano also refused the vaccine because she made the choice to rely on her Biblical religious medical practice wherein she does not consume products that defile her body, which is consistent with her religious Biblical medical practices found in the Bible at I Corinthians 3:16-17, Ex. 15:26, Ex. 16:15.

27. S. Pagano provided Respondent Staten Island evidence of her faith by supplying a letter of support from her religious leader Rev. R. Reband, II Lead Pastor of Oakland Hills Community Church.

28. Respondent Staten Island first informed S. Pagano of the Vaccine Mandate on September 27, 2021 and month after she refused the vaccine, she was refused any reasonable accommodation and terminated on October 10, 2021 although she had worked for a month in her job after Respondent for some time provided the reasonable accommodation of "testing and masking."

29. Respondent Staten Island refused to offer and discuss with S. Pagano the availability of any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status, including the accommodations of allowing her to either perform her job remotely, or to allow her to use a Powered Air Purifying Respirator (PAPR) mask (that she

could pay for), testing periodically and relying on her religious medical practices so that she could continue to work and not be a risk to patients, co-workers or to herself.

30. Since her termination, S. Pagano has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated. (See Respondent Staten Island termination correspondence to Petitioner S. Pagano attached as **Exhibit 31**)

31. T. Anglin is a female, African-American Christian believer who worked for Respondent New York Presbyterian Hospital (Presbyterian) for over eleven (11) years and served as Emergency Room Tech for two (2) years until she was terminated.

32. At all relevant time Respondent Presbyterian demanded that T. Anglin get vaccinated, T. Anglin submitted requests or an appeal(s) to remain unvaccinated while performing her job which required face to face interaction with patients.

33. On October 23, 2021, T. Anglin was terminated by Respondent Presbyterian based on her "perceived disability" wherein she was perceived by Presbyterian as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated based on her choice to rely on her Biblical religious medical practice wherein she does not consume products that defile her body, which is consistent with her religious Biblical medical practices found in the Bible at I Corinthians 3:16-17, Ex. 15:26, Ex. 16:15.

34. Respondent Presbyterian first informed T. Anglin of the Vaccine Mandate some time before September 15, 2021 after which T. Anglin informed Presbyterian on or before October 16, 2021 of her decision to remain unvaccinated due to her sincerely held religious beliefs and thereafter around October 25, 2021 Presbyterian refused to provide T. Anglin any reasonable accommodation.

35.    On October 23, 2021 T. Anglin was terminated by letter from Presbyterian that she was designating as having "resigned from employment" due to her decision to remain unvaccinated.

36.    Under information and belief, T. Anglin was allowed to continue to work during the time that her vaccine exemption was being reviewed utilizing the reasonable accommodation of "masking" and/or Covid testing.

37.    Respondent Presbyterian refused to offer and to discuss with T. Anglin the possibilities of the availability of any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status, including the accommodations of allowing her to either perform her job remotely, or to allow her to use a Powered Air Purifying Respirator (PAPR) mask (that she could pay for), testing periodically and relying on her religious medical practices so that she could continue to work and not be a risk to patients, co-workers or to herself. (See Respondent Presbyterian termination correspondence to Petitioner T. Anglin attached as **Exhibit 31**)

38.    W. Harris is a former employee for Respondent Montefiore Hospital who provided face to face patient care as a Licensed Practical Nurse for over five (5) years and he served in the health care field for over 15 years.

39.    W. Harris is an African-American male Seventh-Day Adventist Bible Believer who strictly follows the plant-based diet and strictly follows THE TEN LAWS of health prescribed in the Bible as his religious medical practice to address disease.

40.    During the Pandemic, until he was terminated, W. Harris worked directly with patients who suffered severe Covid-19 illness and he had never tested positive for the disease.

41.     On or around September 15, 2021, W. Harris was notified of the Respondent Montefiore's vaccine mandate based on New York's PHL §2.61 and W. Harris was given until September 25, 2021 to submit a request for religious exemption if he desired to remain unvaccinated.

42.     On or around September 22, 2021, W. Harris submitted a brief written explanation regarding his religious medical practice as the basis for his refusal to be vaccinated which was supported by a detailed pastoral letter.

43.     Respondent Montefiore rejected W. Harris request for exemption and request for accommodation and placed W. Harris on leave without pay on around October 1, 2021 stating that W. Harris request was "*not of a religious nature, you failed to demonstrate your request was based upon a sincerely held religious belief, practice and observance*" and Montefiore refused to enter into any cooperative discussion with W. Harris to discuss his faith or any possible reasonable accommodations that could be provided to him by Montefiore that could have allowed him to remain in his job.

44.     Under information and belief, Montefiore, however, offered in an undated letter to allow W. Harris to reapply for the exemption and the accommodation by October 15, 2021 while on leave without pay but the offer required W. Harris to submit new information along with the prior submission, after which a response would be provided on or before October 15, 2021.

45.     At all times relevant, Respondent Montefiore would only provide the reasonable accommodations of (weekly PCR testing, and masking) after Montefiore based on its sole discretion approved of the religious basis for the exemption request.

46.     At all relevant times herein, W. Harris was placed on leave without pay because she remained unvaccinated and W. Harris was ultimately terminated on October 29, 2021  by Respondent Montefiore based on his "perceived disability" wherein he was perceived by

Montefiore as being more likely to contract and spread Covid-19 due to his decision to remain unvaccinated based on his Biblical religious medical practice of following THE TEN LAWS of health which includes eating a whole plant-based lifestyle medicine wherein he does not consume any animal products, nor consumes alcohol, nor smokes and she tries to consume mostly organic Non-GMO plants and relies on herbal remedies consistent with her religious Biblical medical practice of plaint-based lifestyle medicine found in the Bible at Genesis 1:29, 30, 3:17-19, 9:4, Ex. 15:26, Ex. 16:15, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, Num 35:33, 1 Cor 3:16-17, 3 John 1:2, Rev. 22:2, to name a few.

47.     Respondent Montefiore denied W. Harris any and all reasonable accommodations that would have allowed him to remain on his job in his unvaccinated status, including the accommodations of using a Powered Air Purifying Respirator (PAPR) mask (that he could pay for), testing periodically and relying on her religious medical practices so that she can continue to work in her position and not be a risk to patients, co-workers or to himself.  (See Exemption Montefiore's Covid-19 polices, notices and accommodation denial notices provided to W. Harris attached as **Exhibit 32**)

48.     Under information and belief, Respondent Montefiore at no time discussed any potential reasonable accommodations that could have been provided by Respondent to Petitioner Harris so that he could remained in his position.

49.     Since his termination, W. Harris has sought employment in the healthcare industry in New York State and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

50.     B. Williams was an employee of Respondent Brookdale working as a Telephone Operator who could work her job entirely remote.

51. B. Williams has worked at Brookdale as a Telephone Operator approximately 10 years and is an African-American, female Bible Believer.

52. At all relevant time Respondent Brookdale demanded that B. Williams get vaccinated, B. Williams submitted requests or an appeal(s) to remain unvaccinated while performing her job which did not require face to face interaction with patients. Specifically, B. Williams made several requests for the accommodation of working remote because her job could be done 100% remote.

53. At all relevant times herein, B. Williams was placed on leave without pay on December 17, 2021 due to her unvaccinated status and was informed that she would be terminated at 5pm on December 31, 2021 if she did not submit to the Covid-19 shot.

54. Respondent Brookdale refused B. Williams any reasonable accommodation and terminated her based on her "perceived disability" wherein she was perceived by Brookdale as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated and her choice to rely on her Biblical religious medical practice wherein she does not consume unclean animal products like pork, nor consume products that defile her body, nor smokes consistent with her religious Biblical medical practices found in the Bible at Ex. 15:26, Ex. 16:15, Lev. Chpt. 11, Chpt. 13, Lev. 17:11, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, and Num 35:33, to name a few.

55. Respondent Brookdale refused to provide B. Williams any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status, including the accommodations of allowing her to either perform her job remotely, or to allow her to use a Powered Air Purifying Respirator (PAPR) mask (which she could pay for), testing periodically and relying on her religious medical practices so that she could continue  to work and not be a risk to patients, co-workers or to herself.

56.   Since her termination, B. William has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated. (See Brookdale Covid-19 policies, correspondence and termination notice and more provided to B. Williams attached as **Exhibit 33**)

57.   C. Bryan was an employee of Respondent Brookdale working as a Recreation Activity Associate responsible for planning patient activities, but she was not responsible for direct patient care.

58.   C. Bryan has worked at Brookdale for over 10 years and is an African-American, female Bible Believer.

59.   At all relevant times, C. Bryan was notified by Respondent of the Covid vaccine mandate and C. Bryan made several requests to obtain a religious exemption in order to from the vaccine requirement and to obtain reasonable accommodations so that she could continue to work retaining her unvaccinated status.

60.   Respondent Brookdale refused to provided C. Bryan an exemption and refused to provide any reasonable accommodation that would allow her to continue to work in her unvaccinated status.

61.   C. Bryan was placed on leave without pay on December 17, 2021 because she remained unvaccinated and was informed that she would be terminated at 5pm on December 31, 2021 if she would not get vaccinated.

62.   On December 31, 2021, C. Bryan was terminated and since that time, C. Bryan has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

63.   At all relevant times, Respondent Brookdale refused to provide C. Bryan any reasonable accommodation and terminated C. Bryan based on her "perceived disability" wherein she was perceived by Brookdale as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated and her choice to rely on her Biblical religious medical practice wherein she does not consume unclean animal products like pork, nor consume products that defile her body, nor smokes consistent with her religious Biblical medical practices found in the Bible at Ex. 15:26, Ex. 16:15, Lev. Chpt. 11, Chpt. 13, Lev. 17:11, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, and Num 35:33, to name a few.

64.   Under Information and belief, C. Bryan made several requests for exemption from the vaccine and specifically requested the reasonable accommodation of obtaining a Powered Air Purifying Respirator (PAPR) type mask so that she could continue to work her job.

65.   Respondent Brookdale refused to provide C. Bryan any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status, including the accommodations of allowing her to either perform her job remotely, or to allow her to use a Powered Air Purifying Respirator (PAPR) mask (that she could pay for), testing periodically and relying on her religious medical practices so that she could continue  to work and not be a risk to patients, co-workers or to herself.  (See Respondent Brookdale's Covid-19 policies, correspondence and termination notice and more provided to C. Bryan attached as **Exhibit 34**)

66.   N. Jack is an African-American, female Bible Believer who worked for 9 years an employee of Respondent Brookhaven Rehabilitation & Health Care Center (Brookhaven) working as an Occupational Therapy Assistant responsible for assisting with direct occupational patient care.

67.    At all relevant times, N. Jack was notified by Respondent of the Covid vaccine mandate and N. Jack made several a request to obtain a religious exemption in order to from the vaccine requirement and to obtain reasonable accommodations so that she could continue to work retaining her unvaccinated status.

68.    Respondent Brookhaven refused to provided N. Jack an exemption and refused to provide any reasonable accommodation that would allow her to continue to work in her unvaccinated status.

69.    N. Jack was placed on leave without pay on November 12, 2021 because she remained unvaccinated and was informed that she would be terminated on December 12, 2021 if she would not get vaccinated.

70.    On December 12, 2021, N. Jack was terminated and since that time, N. Jack has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

71.    At all relevant times, Respondent Brookhaven refused to provide N. Jack any reasonable accommodation and terminated N. Jack on her "perceived disability" wherein she was perceived by Brookhaven as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated and her choice to rely on her Biblical religious medical practice wherein she does not consume unclean animal products like pork, nor consume products that defile her body, nor smokes consistent with her religious Biblical medical practices found in the Bible at Ex. 15:26, Ex. 16:15, Lev. Chpt. 11, Chpt. 13, Lev. 17:11, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, and Num 35:33, to name a few.

72.    Respondent Brookhaven refused to provide N. Jack any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status, including the

accommodations of allowing her to either perform her job remotely, or to allow her to use a Powered Air Purifying Respirator (PAPR) mask (that she could pay for), testing periodically and relying on her religious medical practices so that she could continue  to work and not be a risk to patients, co-workers or to herself.  (See Respondent Brookhaven Covid-19 correspondence and termination notice provided to Petitioner N. Jack attached as **Exhibit 35**)

73.   S. Byfield was an employee of Respondent New York City Health and Hospital/Bellevue (Bellevue) working as Patient Care Assistant responsible for assisting with direct Ambulatory care of patients.

74.   S. Byfield has worked at Bellevue for over 5 years and is an African-American, female Bible Believer who has worked in the healthcare industry approximate 10 years.

75.   At all relevant times, S. Byfield was notified by Respondent Bellevue of the Covid vaccine mandate in the beginning of September 2021, S. Byfield made several a request to obtain a religious exemption in order to from the vaccine requirement and to obtain reasonable accommodations so that she could continue to work retaining her unvaccinated status.

76.   Respondent Bellevue refused to provided S. Byfield an exemption and refused to provide any reasonable accommodation that would allow her to continue to work in her unvaccinated status.

77.   S. Byfield was placed on leave without pay on September 27, 2021 because she remained unvaccinated and was informed that she would be terminated on November 29, 2021 if she would not get vaccinated.

78.   On November 29, 2021, S. Byfield was terminated and since that time, S. Byfield has sought employment in the healthcare industry in New York and has been unable to find any job

that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

79.   At all relevant times, Respondent Bellevue refused to provide S. Byfield any reasonable accommodation and terminated S. Byfield based on her "perceived disability" wherein she was perceived by Bellevue as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated and her choice to rely on her Biblical religious medical practice wherein she does not consume unclean animal products like pork, nor consume products that defile her body, nor smokes consistent with her religious Biblical medical practices found in the Bible at Ex. 15:26, Ex. 16:15, Lev. Chpt. 11, Chpt. 13, Lev. 17:11, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, and Num 35:33, to name a few.

80.   Respondent Bellevue refused to provide S. Byfield any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status, including the accommodations of allowing her to either perform her job remotely, or to allow her to use a Powered Air Purifying Respirator (PAPR) mask (that she could pay for), testing periodically and relying on her religious medical practices so that she could continue  to work and not be a risk to patients, co-workers or to herself.  (See Respondent Bellevue Covid-19 related, correspondence and termination notice provided to S. Byfield attached as **Exhibit 36**)

81.   H. Leckie was an employee of Respondent Montefiore Medical Center, operated by Montefiore Health System (Montefiore), working as a Service Desk Analyst in the IT Department responsible for handling high volumes of call with no direct patient care responsibilities. H. Leckie's job could be performed 100% remote.

82.   H. Leckie has worked at Montefiore for over 2 years and is an African-American, female Bible Believer who has worked in the healthcare industry approximate 10 years.

83.   At all relevant times, H. Leckie was notified by Respondent Montefiore of the Covid vaccine mandate on September 9, 2021, H. Leckie submitted request to obtain a religious exemption from the vaccine requirement and to obtain reasonable accommodations so that she could continue to work in her unvaccinated status.

84.   Respondent Montefiore refused to provided H. Leckie an exemption and refused to provide any reasonable accommodation that would allow her to continue to work in her unvaccinated status.

85.   H. Leckie was placed on leave without pay on October 1, 2021 because she remained unvaccinated and was informed that she would be terminated on October 29, 2021 if she would not get vaccinated.

86.   On October 29, 2021, H. Leckie was terminated because she remained unvaccinated and since that time, H. Leckie has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

87.   At all relevant times, Respondent Montefiore refused to provide H. Leckie any reasonable accommodation and terminated H. Leckie based on her "perceived disability" wherein she was perceived by Montefiore as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated and her choice to rely on her Biblical religious medical practice wherein she does not consume unclean animal products like pork, nor consume products that defile her body, nor smokes consistent with her religious Biblical medical practices found in the Bible at Ex. 15:26, Ex. 16:15, Lev. Chpt. 11, Chpt. 13, Lev. 17:11, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, and Num 35:33, to name a few.

88.    Respondent Montefiore refused to provide H. Leckie any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status, including the accommodations of allowing her to either perform her job remotely, or to allow her to use a Powered Air Purifying Respirator (PAPR) mask (that she could pay for), testing periodically and relying on her religious medical practices so that she could continue to work and not be a risk to patients, co-workers or to herself.  (See Respondent Montefiore Covid-19 related correspondence, policies and termination notice provided to H. Leckie attached as **Exhibit 37**)

89.    Petitioner, J. Baptiste is an African-American male Seventh-Day Adventist Bible Believer who worked 13 years for Defendant Mt. Sinai Hospital Health System, Mt. Sinai West Hospital located, 1111 Amersterdam Ave., New York, New York 10025 (Mt. Sinai) as a Registered Critical Care Nurse with face to face patient care.

90.    During the 13 years J. Baptiste worked at Mt. Sinai, he always received a work schedule adjustment of a reasonable accommodation for his religious practice of not working on seventh-day of the week called Shabbat.

91.    At all relevant time Respondent Mt. Sinai demanded that J. Baptiste get vaccinated, J. Baptiste submitted requests and/or an appeal(s) to remain unvaccinated while performing his job which he would need a reasonable accommodation to perform because he provided face to face interaction with patients.

92.    On September 15, 2021, Respondent Mt. Sinai placed J. Baptiste on leave without pay and told him that if he did you get vaccinated he would be terminated. The next day, on September 16, 2021, Mt. Sinai reinstated J. Baptist with no explanation, but was told take period Covid-19 tests while Mt. Sinai continued to consider his exemption request.

93.    J. Baptist was again placed on leave with pay from November 22, 2021 because he remained unvaccinated until November 28, 2021 and then he was terminated by Mt. Sinai on December 3, 2021, because J. Baptist requested to continue to work while unvaccinated.

94.    At all times relevant, Mt. Sinai terminated J. Baptiste and refused to provide any reasonable accommodation based on J. Baptiste "perceived disability" wherein at all relevant times he was perceived by Respondent Mt. Sinai as being more likely to contract and spread Covid-19 due to his decision to remain unvaccinated and his choice to rely on his Biblical religious medical practice of whole plant-based lifestyle medicine. J. Baptiste has eaten a plant-based dominant diet for over 10 years, does not consumed any alcohol, nor has he smoked and relies on herbal remedies consistent with his religious Biblical medical practice of a plant predominant lifestyle medicine, which includes following THE TEN LAWS of health found in the Bible in Genesis 1:29, 30, 3:17-19, 9:4, Ex. 15:26, Ex. 16:15, Ps. 103:3, 104:14,  Ps 78:18, Num 6:3, Num 35:33, 1 Cor 3:16-17, 3 John 1:2, Rev. 22:2, to name a few.

95.    Respondent Mt. Sinai denied J. Baptiste any and all reasonable accommodations that would have allowed him to remain on his job in his unvaccinated status, including the accommodations of using a Powered Air Purifying Respirator (PAPR) mask (that he would pay for), testing periodically and relying on his religious medical practices so that he can continue to work and not be a risk to patients, co-workers or to himself.

96.    Mt. Sinai also failed to have any interactive consultation with J. Baptiste in order to determine the best reasonable accommodation for him that would have kept him working full-time in his  position.

97.    J. Baptiste is married to R. Baptiste who was a Paraprofessional for District 75 Special Education for the New York City Department of Education (DOE) and who has also been terminated by the DOE for his refusal to accept the vaccine.

98.  As a result of his wife's unemployment, coupled with his own unemployment, J. Baptiste has been and shall be permanently harmed by Respondent Mt. Sinai refusal to provide him reasonable accommodations wherein he is unable to find any health care jobs in the entire State of New York and will have to permanently move out of the state to seek employment.

99.  Since his termination, J Baptiste has sought for other healthcare jobs in New York State and has not found any healthcare job that does not require new hires to submit to the Covid-19 vaccine and he has not found any healthcare jobs that would provide a reasonable accommodation so that he could get hired in his unvaccinated status. (See Respondent Mt. Sinai Hospital and Health System Covid-19 related correspondence, policies and termination notice provided to Petitioner J. Baptiste attached as **Exhibit 38**)

100.  T. Beswick is a female African-American Bible Believer who has worked for Respondent Staten Island University Hospital/Northwell Health (Staten Island) for over 17 years and 9 months as a Patient Care Assistant in the Ventilation Unit.

101.  At all relevant time Respondent Staten Island demanded that T. Beswick get vaccinated, T. Beswick submitted requests or an appeal(s) to remain unvaccinated while performing her job which required face to face interaction with patients.

102.  T. Beswick was terminated on September 31, 2021 by Respondent Staten Island based on her "perceived disability" wherein she was perceived by Staten Island as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated and her choice to rely on her Biblical religious medical practice wherein she does not consume unclean animal products, nor consumes products that defile her body, nor smokes consistent with her religious Biblical medical practices found in the Bible at I Corinthians 3:16-17, Ex. 15:26, Ex. 16:15, Lev. Chpt. 11, Chpt. 13, Lev. 17:11,  Ps. 103:3, 104:14, Ps 78:18, Num 6:3, and Num 35:33, to name a few.

103. Respondent Staten Island first informed T. Beswick of the Vaccine Mandate on September 27, 2021 and just three days after she decided to remain unvaccinated on September 31, 2021, Staten Island refused to provide T. Beswick with any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status and terminated her.

104. Respondent Staten Island swift termination of T. Beswick occurred without Staten Island first engaging in good faith cooperative dialogue with T. Beswick to discuss what accommodations she needed to remain on the job in her unvaccinated status.

105. Since her termination, T. Beswick has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated. (See Respondent Staten Island Covid-19 related correspondence, policies and termination notice provided to Petitioner T. Beswick attached as **Exhibit 39**)

106. K. Tantillo is a female Christian who has worked for Respondent Staten Island University Hospital/Northwell Health (Staten Island) for over 16 years as a Registered Nurse Case Manager.

107. At all relevant time Respondent Staten Island demanded that K. Tantillo get vaccinated, K. Tantillo requested to remain unvaccinated while performing her job which required face to face interaction with patients.

108. K. Tantillo was terminated on October 15, 2021 by Respondent Staten Island based on her "perceived disability" wherein she was perceived by Staten Island as being more likely to contract and spread Covid-19 due to her decision to remain unvaccinated based on her faith beliefs.

109. Respondent Staten Island first informed K. Tantillo of the Vaccine Mandate around September 1, 2021 and allowed her to work following Respondents protocols while unvaccinated until the date she was terminated, and Staten Island refused to provide K. Tantillo with any and all reasonable accommodations that would allow her to remain on her job in her unvaccinated status and terminated her.

110. Respondent Staten Island swift termination of K. Tantillo occurred without Staten Island first engaging in good faith cooperative dialogue with K. Tantillo to discuss what accommodations she needed to remain on the job in her unvaccinated status.

111. Since her termination, K. Tantillo has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated. (See Respondent Staten Island Covid-19 related correspondence, policies and termination notice provided to Petitioner K. Tantillo attached as **Exhibit 40**)

B. **Defendants**

112.  Brookdale University Hospital and Medical Center ("Brookdale") is a not-for- profit corporation organized and existing under the laws of the State of New York having its principal place of business at Brookdale Plaza, Brooklyn, New York and is part of the One Brooklyn Health System.

113. One Brooklyn Health System, was and still is a domestic not-for-profit corporation duly authorized to own property and conduct business in the State of New York and with premises located at 68th Street and York Avenue, in the Borough of Manhattan City, New York.

114. The Brooklyn Hospital Center (BHC), was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York operating a hospital facility located at 121 Dekalb Avenue, Brooklyn, New York 11201.

115. Montefiore Health System (Montefiore), was and still is domestic non-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York and is the owner and operates the medical facility called Montefiore Medical Center located at 111 East 233 Street, County of the Bronx, City and State of New York.

116. Montefiore, was and still is a professional limited liability company and/or corporation duly organized and existing under and by virtue of the laws of the State of New York, with a principal place of business located at 111 East 210th, Street, Bronx, New York 10467.

117. United Methodist Homes (UMH) was and still is a domestic non-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York, with a principal place of business 286 Deyo Hill Road, Johnson City, NY 13790.

118. Mount Sinai Health System, Inc. (Mt. Sinai) was and still is a domestic non-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York, with a principal place of business One Gustave, Levy Place, New York, New York, 10029.

119. Mount Sinai Hospital West (Sinai West) was and still is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York, with a principal place of business One Gustave, Levy Place, New York, New York, 10029 and which operates a facility with health care employees located at 111 Amsterdam Ave. New York, New York 10025, which operate under the Mount Sinai Health System, Inc.

120. Staten Island University Hospital (Staten Island), at all times hereinafter mentioned, was and still is a domestic limited liability company, duly organized and existing under and by virtue

of the laws of the State of New York operating a facility with healthcare employees at 475 Seaview Ave. Staten Island, New York 10304.

121.  New York Presbyterian Hospital (Presbyterian), at all times hereinafter mentioned, was and still is a domestic non-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York operating a facility with healthcare employees at 161 Fort Washington Ave New York, New York 10032 that is part of the New York Presbyterian Healthcare System, Inc.

122.  New York Presbyterian Healthcare System, Inc., at all times hereinafter mentioned, was and still is a domestic non-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York operating a facility with healthcare employees at 161 Fort Washington Ave New York, New York 10032.

123.  New York City Health & Hospitals/Bellevue (Bellevue) was and still is a domestic not-for-profit hospital organized and existing under the virtues of the State of New York with its principal place of business situated in the County of New York and the State of New York operating through the New York City Heath and Hospitals Corporation with a medical facility located at 462 1st Avenue New York, New York 10016 that is part of the New York City Health and Hospitals Corporation.

124.  New York City Health and Hospitals Corporation (NYCHH) was and still is a municipal corporation organized and existing under the virtues and laws of the State of New York, with its principal place of business situated in the County of New York and the State of New York and operating medical facilities located at 462 1st Avenue, New York, New York 10016.

125.  Staten Island University Hospitals/Northwell Health (Staten Island) was and still is a municipal corporation organized and existing under the virtues and laws of the State of New York, with its principal place of business situated in the County of New York and the State

of New York and operating medical facilities located at 475 Seaview Avenue, Staten Island, New York 10305.

126.    Brookhaven Rehabilitation and Health Care Center was and still is a domestic not-for-profit hospital organized and existing under the virtues of the State of New York operating a healthcare facility at the location of 250 Beach 17th Street, Far Rockaway, New York 11691.

## FACTUAL BACKGROUND

127.    In 1970, Congress (through its Constitutional power under Article 1, Section 8 of the Commerce Clause) enacted the Occupational Safety and Health Act (OSH Act) described by in the "All About OSHA" publication by the Occupational Safety and Health Administration as a law that "makes it clear that the right to a safe workplace is a basic human right" and that employers are responsible for providing a safe and healthful workplace. (See Exhibit ____)

128.    The OSH Act created the federal Occupation Safety and Health Administration (OSHA) and gae exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means, methods, operations, and processes" to meet the minimum standards.

129.    Congress reserved to the OSHA Secretary the exclusive power to set "a nationwide floor of minimally necessary safeguards" that federal, state and private employers and places of public accommodation are mandated to meet for public health and safety. 29 U.S.C. § 651(b)

See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty*., 228 Cal. Rptr. 3d 406 (Cal. 2018).

130. The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards." *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd*., 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

131. All Defendant healthcare facilities is a cover entity under the OSH Act that must comply with the OSHA minimum safety standards.

132. Under the OSH Act General Duty Clause at 29 USC 654 Sec 5, Defendants shall provide a workplace that is free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees.

133. Pursuant to the OSHA General Duty Clause and the Respiratory Standards contained in 29 CFR §1910.132 and 29 CFR §1910.134, Defendants have a duty to prevent exposure to airborne hazardous infectious diseases found in the atmosphere of the workplace, including but not limited to the infectious diseases of SARS, MRSA, Zika, Pandemic Influenza, Measles, and Ebola. (See Exhibit _____, Page 1)

134. The primary objective of the OSHA Respiratory Standards is to implement "practices, means, **methods**, operations, or processes" that, at minimum, either: 1) remove hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere.

135. According to the CDC, the virus that causes Covid-19 is an airborne hazardous viral infection that is transmitted in airborne sprays or droplets from person to person in all environments and is an infectious disease which will always be in the atmosphere of workplaces and public places. (See Exhibit _____)

136. According to the CDC, the Covid-19 airborne viral hazard can cause serious physical injury and/or death.

137. Defendants along with all employers are mandated by the OSHA regulations to use only safety "methods" that meet the OSHA Respiratory regulation standards that requires approved methods to either remove airborne hazards from the workplace atmosphere or shield employees from exposure from airborne hazards.

138. No vaccine or immunization is capable of meeting the OSHA Respiratory regulation standard for approved methods because neither vaccines nor immunization can remove airborne hazards from the workplace atmosphere and neither can they shield employees from exposure to any airborne hazard, including the Covid-19 airborne hazard or any other airborne infectious disease.

139. According to Dr. Baxter Montgomery, MD, a cardiologist responsible for OSHA workplace safety in his medical facility, vaccines/immunizations are "medical treatments" that affects the human immune system and are incapable of removing airborne infectious diseases from the air or shielding employees from exposure to any airborne infectious disease, like Covid-19 that can cause serious injury or death.  (See Exhibit ___. Dr. Montgomery Affidavit)

140. While all vaccines obtain federal approval for use from the Food & Drug Administration (FDA), the 1938 Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).

141. The FDA does not have authority to regulate methods to be used to provide environmental health and safety in physical places of business and workplaces.

142. Neither does FDA approval of any vaccine for use, nor does a recommendation from the Center for Disease Control (CDC) that the Covid-19 vaccine is "safe and effective," automatically make if or any vaccine, including the Covid-19 vaccine an OSHA approved "safety method" that employers can use to prevent employee exposure to airborne communicable infectious diseases including the Covid-19 airborne viral hazard.

143. The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse. *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

144. The OSH Act does not authorize the OSHA Secretary nor employers regulated by the OSH Act and regulations to prescribe FDA "medical treatments" to eliminate airborne workplace hazards like Covid-19 that can cause serious injury or death.

145. It is a felony in New York for any unauthorized person to prescribe or mandate a "medical treatment," including the medical treatment of the Covid-19 vaccine. See New York Education Law §6520& §6521 and §6512.

146. Vaccines/immunizations are not OSHA authorized or approved workplace safety methods that employers are permitted to use to comply with the OSHA mandate that employers protect employees from exposure to airborne hazards.

147. Vaccines/immunizations fall below the approved OSHA Respiratory safety method standards.

148. In 2009, the World Health Organization declared H1N1 a "global pandemic" and OSHA did not add vaccines to the list of approved safety methods for managing the H1N1 airborne communicable disease in the workplace.  (See Appendix 11)

149. Covered employers are mandated to comply with all OHSA minimum safety standards. 29 U.S.C. §654 Section 5(a)(2)

150. The FDA and the CDC are agencies within the U.S. Federal Department of Health and Human Services (HHS).

151. Pursuant to 29 U.S.C. §669 Sec. 20(a)(1) of the OSH Act, the Secretary HHS in consultation with the OSHA Secretary can conduct directly or by grants or contracts, research and "experiments" relating to approaches for dealing with occupational health problems.

152. On or around March 11, 2020, the World Health Organization declared the infectious airborne Covid-19 virus a Global Pandemic.

153. According to the CDC, the principal mode by which people are infected with the Covid-19 virus is through exposure to respiratory fluids carrying infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, including the atmosphere in workplaces, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them. (See Exhibit _____ )

154. On or around December 11, 2022, HHS through its FDA agency provided Emergency Use Authorization (EUA) for Pfizer-BioNTech, Moderna, and Janssen Covid-19 vaccines (collectively the "Vaccines") as experimental medical treatments for the virus that causes the Covid-19 infection in humans, including infections of employees in workplaces or places of public accommodations.

155. The HHS/FDA EUA approval of the experimental Vaccines was part of the many "activities" authorized under the OSH Act in 29 U.S.C. §669 Sec. 20(a)(1) relating to approaches for dealing with occupational health problems, which Covid-19 infections of employees in healthcare facilities is an occupational health problem.

156. When Congress enacted the 1972 Communicable Disease Control Program (CDCP) it only authorized the Secretary of HHS to make any vaccine in general freely available to the general public through federal grants to states. (See Exhibit _____)

157. The legislative history of the CDCP reveals that neither HHS nor any other federal agency, including OSHA, has ever been authorized by Congress to mandate compulsory human vaccination of any kind.

158. 29 U.S.C §669 Section 20(a)(5) of the OSH Act specifically prohibits the Secretary of HHS or OSHA from requiring or mandating medical examinations, vaccines/immunizations or treatment for employees who object to a vaccine/immunization, medical examination or treatment on religious grounds.

159. Section 20(a)(5) of the OSHA Act states that "Nothing in this or any other provision of this Act shall be deemed to authorize or require medical examination, immunization, or treatment for those who object thereto on religious grounds….

160. Section 20(a)(5) of the OSHA Act provides a statutory "automatic religious exemption" from vaccine mandates and testing that is guaranteed to all employees by the Congressional enactment, which cannot be changed by the Secretary of OSHA nor by any other federal or state agency or legislator.

161. The language of Section 20(a)(5) of the OSH Act does not place any pre-conditions on the granting of "automatic religious exemption" provision wherein employers have the right to

deny employees request for an exemption from a vaccine/immunization or test on religious grounds.

162. Consistent with the OSH Act, the New York State law pursuant to Public Health Law (PHL) §206(1)(l) prohibits the New York State Department of Health and Health Planning Commissioner ("Commissioner") from establishing regulations that mandate adult vaccination. (See PHL §206(1)(l) attached as **Exhibit____**)

163. On March 2, 2020, Governor Andrew Cuomo issued Executive Order No. 202[1], extended by Executive Order No. 202.28, that temporarily modified PHL § 225 such that the New York State Department of Health Commissioner can promulgate emergency regulations ("Emergency Orders or EO") and to amend the State Sanitary Code.

164. On August 18, 2021, the New York State Department of Health (NYSDOH) Commissioner issued an Executive Order Public Health Law (PHL) §16 requiring Covered Entities[2] to "continuously require covered personnel to be fully vaccinated against Covid-19 with the first dose for current personnel to be received by September 27, 2021." (See PHL §16 attached the Petition as **Exhibit 4**)

165. PHL §16 (c)(2) lists "religious exemptions" as one of the "Limited exemptions to vaccination" along with medical exemptions. Id.

166. Defendants are all general hospitals defined as "Covered Entities" defined in PHL §16 regulated by the Public Health Laws subject to all NYSDOH Emergency Orders.

167. On August 24, 2021, the Greater New York Hospital Association (GNYHA) hosted a virtual member meeting for all New York Hospital members, which included a PowerPoint

---

[1] See Executive Order 202 at https://www.governor.ny.gov/sites/default/files/atoms/files/EO_202.pdf
[2] PHL § 16 defines Covered entity as a general hospital or nursing home pursuant to Section 2801of the Public Health Law – see See PHL § 16  at - https://www.gnyha.org/wp-content/uploads/2021/08/Order-for-Summary-Action-in-the-Matter-of-Covered-Entitities-in-the-Prevention-and-Control-of-the-2019-Novel-Coronavirus-DOH.pdf

presentation titled "Managing Requests for Reasonable Accommodations for Mandatory COVID-19 Vaccination", which instructed medical and hospital providers on how to provide "reasonable accommodations" to person who seek religious exemptions and accommodations. (See GNYHA Presentation attached to the Petition as **Exhibit 13**)

168.  On August 26, 2021, the NYSDOH Commissioner repealed PHL §16 and issued PHL §2.61 titled "Prevention of COVID-19 Transmission by Covered Entities" to supersede PHL §16 to add more detailed instructions for Covered Entities regarding the vaccine requirements for covered employees. (See Exhibit ___ PHL §2.61)

169.  In PHL §2.61 Subsection (d) titled "Exemptions" it no longer lists religious exemptions for covered employees; rather the updated EO expanded the requirements for granting medical exemptions. (See **Exhibit 28**, Page 3)

170.  However, on page 13 of PHL §2.61 under the "Regulatory Impact Statement" under subsection "Duplication" it states as follows:

**This regulation will not conflict with any state or federal rules**.

171.  On Page 22 of PHL §2.61 under the "Job Impact Statement" under subsection "Nature of Impact" it states as follows:

> Covered entities **may terminate** personnel who are not fully vaccinated and do not have a valid medical exemption and are unable to otherwise ensure individuals are not engaged in patient/resident care or expose other covered personnel. (Emphasis added)
>
> (See **Exhibit 28**, Page 22)

172.  While the above language in the regulation permits employers to terminate unvaccinated employees, nothing in PHL §2.61 "mandates" nor "requires" Covered Entities to terminate employees who remain unvaccinated in order for Covered Entities to be in compliance with PHL §2.61 and with state and or federal laws, including the OSH Act that requires employers to provide "automatic religious exemptions" from experimental vaccines and

requires covered employers to use OSHA approved and effective Respiratory safety methods like PAPR safety respirators that are 99.97% effective at preventing employee exposure to the Covid-19 airborne hazard.

173. On October 28, 2021, the Commissioner issued EO PHL § 405.11 expressly requiring hospitals to maintain a supply of PPE, specifically N95 respirator masks. (See § 405.11 attached to Petition as **Exhibit 12**).

174. In all the years that those Plaintiffs who have been employed by their respective Defendant hospitals since 2009 when the World Health Organization declared H1N1 a global pandemic, those Plaintiffs have never been mandated to submit to any vaccine or immunization or face termination for failure to be immunized. (See Exhibits _____)

**II**    **OSHA Mandates On Healthcare Facilities**

175. The OSH Act Respiratory regulation standard §1910.134 (a)(2) which is part of the General Duty Clause applicable to all employers (Defendants) that has been effect since 2006, expressly **mandates** employers to provide certain respirator PPE to employees as follows:

> A respirator **shall be provided to each employee** when such **equipment is necessary to protect the health of such employee**. The employer shall provide the respirators which are applicable and suitable for the purpose intended. The employer shall be responsible for the establishment and maintenance of a respiratory protection program, which shall include the requirements outlined in paragraph (c) of this section. The program shall cover each employee required by this section to use a respirator. **(Emphasis added)**

> (See OSHA 1910.134 Standard attached to Petition as **Exhibit 26**)

176. OSHA ETS Section 1910.134(b) defines Powered air-purifying respirator (PAPR) as one of the types of respirators that can be provided to employees to comply with the standard. (See ETS Section 1910.134(b) attached to Petition as **Exhibit 26** )

177.   According to a 2015 report published by the U.S. Department of Labor, OSHA, CDC, the

National Institute for Occupational Safety and Health (NIOSH) and the Department of Health

and Humans Services (USDHHS),  PAPRS **provide more protection than N95 respirators**

because the PAPR uses a blower to force air through filters or cartridges and into the

breathing zone of the wearer that creates a positive pressure inside the facepiece or hood

reducing inward leakage of potentially contaminated air, providing more protection than a

non-powered or negative-pressure half mask. PAPRS are also more effective than N95

respirators because they contain High-efficiency particulate (HEPA) filters that are 99.97%

effective in removing occupational diseases caused by breathing air contaminated with

harmful dusts, fogs, fumes, mists, gases, smokes, sprays, or vapors, (See 2015 Hospital

Respirator Protection Program Toolkit attached to Petition as **Exhibit 5**, Page 17)

178.   On June 21, 2021, before the New York DOH vaccine mandate was issued, OSHA issued an

Emergency Temporary Standard for healthcare entities (Healthcare ETS) that states as

follows:

As the CDC states in the FAQs (CDC, March 4, 2021), although facemasks are routinely
used for the care of patients with common viral respiratory infections, N95 filtering facepiece
respirators or equivalent (e.g., elastomeric half-mask respirators) **or higher-level (e.g., full
facepiece respirators or PAPRs) respirators are routinely recommended to protect
healthcare workers from emerging pathogens like the virus that causes COVID-19,
which have the potential for transmission via small particles.** The CDC further advises
that while facemasks will provide barrier protection against droplet sprays contacting
mucous membranes of the nose and mouth, they are not designed to protect wearers from
inhaling small particles. Because of this, the CDC recommends the use of respirators for
close-contact care of patients with suspected or confirmed COVID-19. **The CDC
recommends** that N95 filtering facepiece respirators (FFRs) and **higher-level respirators**,
such as other disposable FFRs, powered air-purifying respirators (PAPRs), and elastomeric
respirators, **should be used when both** barrier and respiratory protection is needed for
healthcare workers because respirators provide better fit and filtration characteristics.  (*See*
OSHA ETS attached to Petition as **Exhibit 8**).

179. On Page 32454, the OSHA June 2021 Healthcare Emergency Temporary Standard (ETS) it states that the "removal" of employees from the workplace is only permitted with the employee is contagious, as stated below.

> The first two categories of employees who should be removed from the workplace are those employees who are suspected to be or are confirmed to have COVID-19 based on a COVID-19 test or diagnosis by a healthcare provider and those employees who develop certain Start Printed Page 32454COVID-19 symptoms. Removal of these two categories of employees is consistent with isolation guidance from the CDC (February 11, 2021). The third category of employees who should be removed from the workplace to further reduce disease transmission are those who are at risk of developing COVID-19 because they have had recent close contact in the workplace with someone who is COVID-19-positive while not wearing a respirator and all required PPE (CDC, March 12, 2021). The need for removal of these employees is based on quarantine guidance from CDC (December 2, 2020) and is consistent with CDC recommendations for quarantine as a means of reducing workplace transmission (CDC, February 16, 2021a).

180. Nothing in the June 2021 OSHA Healthcare ETS authorizes employers to terminate an unvaccinated person, absent the existence of the above factors for "temporary removal" just because they are unvaccinated.

181. Back on January 6, 2021, OSHA also published specific detailed guidance to help employers protect workers who are "unvaccinated" in the publication "Protecting Workers: Guidance on Mitigating and Preventing the Spread of COVID-19 in the Workplace". See the OSHA Guidelines are attached as **Exhibit 27**)

**III     New York Human Rights Commission Covid -19 Anti-Discrimination Protections**

182. Also, in effect at the time of the DOH Emergency Orders and OSH Healthcare ETS were issued, is the New York City Human Rights Law (CHRL) codified in Administrative Code § 8-107, entitled "Unlawful Discriminatory Practices" provides in Subdivision (1) (a) (3) that, in the context of "[e]mployment," "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or **perceived . . .**

49

**disability** . . . status of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment" (§ 8-107 [1] [a] [3]. (See Relevant Sections of NYCHRL attached to Petition as **Exhibit 7**)

183.  The CHRL Administrative Code § 8-107[15][a] goes on to state that "it is an unlawful discriminatory practice …… **not to provide** a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job…..

184.  On November 1, 2021, the New York City Human Rights Commission issued its anti-discrimination guidelines regarding New York City Human Rights Laws[3] titled "COVID-19 & Employment Protections," which relevant parts state as follows:

Employers must not discriminate against or harass employees with actual or perceived infection with COVID-19, or based ……..on the presumption that they …….are more likely to contract COVID-19 due to their actual or perceived …..religion or another protected status.
(See "Guidelines attached to Petition as **Exhibit 7**)


**FIRST CAUSE OF ACTION**
**WRONGFUL TERMINATION UNDER THE OSH ACT**
**( 29 U.S.C. §660 Section 11(c))**

**A.  OSH Act Prohibits Violations of Statutory Rights**

185.  Plaintiffs repeat, reiterate, and reallege each and every allegation in the Statement of facts and descriptions of Plaintiffs above which all statements are incorporated herein by this reference.

186.  After a series of lawsuit were filed in New York District court challenging the constitutionality of PHL §2.61 for its lack of an expressed provision for religious exemptions, on November 5, 2021, the United States Court of Appeals for the Second Circuit in the cases

---

[3] See all amendments to the CHRL at https://www1.nyc.gov/site/cchr/law/amendments.page

*Dr. A., et. al. v. Hochul* and *We the Patriots* v. Hochul reconfirm that the language of PHL §2.61 did not conflict with any accommodation requirements under federal or state law.

187. The Second Circuit specifically held as follows:

> "In our opinion, however, we stated that "Section 2.61, on its face, does not bar an employer from providing an employee with a reasonable accommodation that removes the individual from the scope of the Rule." 2021 WL 5121983 ….. In other words, it may be possible under the Rule for an employer to accommodate – not – exempt – employees with religious objections, by employing them in a manner that removes them the Rule's definition of "personnel." Id. Such an accommodation would have the effect under the Rule of permitting such employees to remain unvaccinated while employed.
> "……..We caution further that our opinion addressed only the likelihood of success on the merits of Petitioners' claims; it did not provide our court's definitive determination of the merits of those claims."

188. Under information and belief, after the Second Circuits opinion, certain Petitioners weekly received from Respondents notices stating that the Second Court did not allow religious exemptions and that they had to get vaccinated, and none of the Respondents ever provided any of the Petitioners with any notice regarding their rights to receive the Authorized Accommodations or any type of accommodation as alternatives to vaccination that where available that could keep them safe. (See Petitioner Affidavits attached to the Petition as **Exhibits 16 – 23 + Exhibits 31-39**).

189. All Petitioners submitted requests to Respondents as early as September 23 requesting an exemption and/or the Authorized Accommodations to allow them to remain Vaccine Deficient and perform the essential functions of their job due to their "perceived disabled" status.

190. Under information and belief, all Petitioners received letters some time on or after September stating that their requests were "pending" and the letter included the following representation:

> If your request is conditionally approved .  .  .., you will be permitted to continue to work and undergo weekly PCR testing. **The approval will be conditional until the courts make a final determination if religious exemption is permitted** under NYS vaccination mandate for healthcare workers.  **As a reminder, at present,**

**religious exemption is not available under the New York State Department of Health Covid -19 vaccination mandate.**

(See Petitioner Affidavits attached to the Petition as **Exhibits 16 – 23** and all exhibits attached to each affidavit as <u>Exhibit A</u> along with **Exhibits 31-39**).

191.    Specifically, Petitioners employed at Brookdale Hospital Medical Center (BHMC) who had jobs that required them to have face to face contact with patients requested to be provided the Authorized Accommodation of testing and masking with a PAPR respirator mask to eliminate the risk of contracting or spreading Covid-19 at their job site.

(See Petitioner Affidavits attached to the Petition as **Exhibits 16, 17, 20, 22, 23** and all exhibits attached to each affidavit as <u>Exhibit A</u>).

192.    To make it easy for Respondents to approve the requested Authorized Accommodations, all Petitioners employed at Brookdale offered to pay for the PAPR masks so that their accommodation would not be an undue burden on Respondent Brookdale to provide the accommodation.

**B.  Refusal to Provide OSHA Authorized Workplace Modifications**

193.    Most Petitioners who had jobs that could be worked remotely requested adjustments to the workplace polices to allow them to work their jobs "remotely" from home.

(See Petitioner Affidavits attached to the Petition as **Exhibits 18, 19, & 21** and all exhibits attached to each affidavit as <u>Exhibit A</u>).

194.    All of the Petitioners had their requests for exemption and/or for the Authorized Accommodations rejected.

(See Petitioner Affidavits attached to the Petition as **Exhibits 16 – 23** and all exhibits attached to each affidavit as <u>Exhibit A</u>).

**C.  Refusal to Participate in "Good Faith" Cooperative Dialogue**

195.  Under information and belief, all of the Petitioners were not given the opportunity to engage in "Cooperative Dialogue" with Respondents as required by CHRL §8-102, wherein Respondents made a "good faith" effort either in writing or oral dialogue to discuss with Petitioners their individual accommodation needs, the potential accommodations could address each Petitioners needs, and neither were any alternative accommodations provided by Respondents.

196.  Under information and belief, none of the Respondents provided any detailed information regarding how the requested Authorized Accommodations would pose any difficulty for the Respondents to pay for or implement.

197.   Although Defendant Brookdale Hospital Medical Center (BHMC) did call or met with a few of Petitioners regarding their written request for the Authorized Accommodations, each Petitioner was specifically told that the BHMC's "polices could not be changed to allow the Petitioner to perform their job remotely" or Petitioners were told that the option of "receiving a PAPR mask and testing was not available". No other information was provided.

198.  Under information and belief, all Petitioner's received rejection letters or emails that contained the same or similar rejection language that followed the opinion in the Second Circuit decision as listed below:

> DOH has communicated, however, that the **only permissible reasonable accommodation** for a person with a sincerely held religious belief is one that **removes the person from the performance** of "activities such that if they were infected with COVID-19, they could potentially expose patients, residents, or personnel" while working at an OBH facility.

> (See Petitioner Affidavits attached to the Petition as **Exhibits 16 – 23**  and all exhibits attached to each affidavit as Exhibit A along with **Exhibits 31-39**).

**SECOND CAUSE OF ACTION**

**Constructive Discharge**

199. Petitioners repeat, reiterate, and reallege each and every allegation above and incorporates all statements herein by this reference.

200. All of the Petitioners have been placed on leave without pay because of their "perceived disability" as Vaccine Deficient and were refused the Authorized Accommodation.

201. Under information and belief all Respondents have collectively refused to provide all Petitioners the Authorized Accommodations.

**THIRD CAUSE OF ACTION**
**Conspiracy To Discriminate & Harassment**

202. Petitioners repeat, reiterate, and reallege each and every allegation above and incorporates all statements herein by this reference.

203. Under information and belief, there is an agreement amongst all of the Respondents that they would terminate all the unvaccinated in their employ on or before December 31, 2021.

204. Under information and belief, all Respondents agreed to interpret the New York State mandate PHL §2.61 to prevent any healthcare employer in the State of New York from providing any accommodation to any unvaccinated employee that requested an exemption and they agreed to interpret PHL § 2.61 to require that all unvaccinated employees be removed from all healthcare facilities and terminated if any unvaccinated employee refused to received the Covid-19 vaccine in order to return to their healthcare facilities to work (the "False Narrative").

205. All Petitioners have been terminated by all Respondents based on the fact that all Petitioners suffered from a Vaccine Deficiency and they were all terminated because all Respondents

refused to provide all Petitioner any reasonable accommodation that would allow them to remain in their jobs.

206. Under information and belief, all Respondents collectively and/or individually have agreed to utilize their inaccurate interpretation of PHL §2.61 so that they could coerce, force and harass all Petitioners to get vaccinated by telling all Petitioners they had not right to any exemption and by withholding compensation and benefits from all Petitioners so that they would abandon their right to refuse the Covid-19 vaccine, for whatever reason, including their religious liberty rights protected by the First Amendment.

207. On September 25, 2021, Governor Hochul announced that an alteration to the unemployment insurance scheme. Healthcare workers who failed to comply with the mandate would be ineligible for unemployment insurance benefits if they were terminated for refusing to take the vaccine. See In Preparation for Monday Vaccination Deadline, Governor Hochul Releases Comprehensive Plan to Address Preventable Health Care Staffing Shortage (Sept. 25, 2021) https://www.cbsnews.com/news/covid-19-vaccine-mandate-new-york-health-care-workers/ .

208. New York State's website explains that unemployment insurance cases are generally "reviewed on a case-by-case basis," but healthcare workers who refuse a vaccine are "ineligible." N. Y. State Dept. of Labor, Unemployment Insurance Top Frequently Asked Questions (Sept. 25, 2021), https://dol.ny.gov/unemployment-insurance-topfrequently-asked-questions .

209. All Respondents  knew or should have known that all Petitioners whom they terminated due to their Vaccine Deficiency would be ineligible to receive unemployment benefits and under information and belief all Respondents notified New York's Department of Labor that Petitioners were terminated because they refused to take the Covid-19 vaccine, but they

probably did not report to DOL that all Petitioners were actually terminated because they had a "perceived disability" of Vaccine Deficiency.

210. Under information and belief, Respondents also refused to pay Petitioners sick pay, vacation pay, and personal leave pay earned by each Petitioners while put on leave without pay so that they all would be coerced and harassed into taking the Covid-19 vaccine.

211. Under information and belief, representatives, agents and leadership personnel of all Respondents collectively meet regularly by invitation of the GNYHA to discuss and strategize compliance with DOH regulations and during those meetings Respondents have all agreed to deny unvaccinated employees the Authorized Accommodations pursuant to the NYCHRC Guidelines and Respondents have all agreed to terminate on or before December 31, 2021 all unvaccinated employees who failed to show proof of vaccination by that date.

## FOURTH CAUSE OF ACTION
### Retaliation

212. Petitioners repeat, reiterate, and reallege each and every allegation above and incorporates all statements herein by this reference.

213. Under information and belief, the Respondents' collective agreement to place all Vaccine Deficient employees in their companies on leave without pay before the Christmas holiday and to withhold compensation benefits and to terminate them all on or before December 31, 2021 was done to harass and to retaliate against Petitioners based on their "perceived disability" as suffering from a Vaccine Deficiency.

214. All Respondents required each Petitioner to apply and/or reapply for religious exemptions, when they knew all along that they were never going to provide any accommodation that

would allow any of the Petitioners to remain in their jobs either within their facilities or to work from home.

215. Respondents written notices informing each Petitioner in and around September 2021of the New York Department of Health vaccine requirements contained the following language:

> "the state also prohibited hospitals from exempting their employees from the mandate for religious reasons" and that "the only permissible reasonable accommodation for a person with a sincerely held religious belief is one that removes the person from the performance of their activities…"

216. All Respondents knew or should have known that the plain language of PHL §2.61 did not expressly abrogate any religious exemption or any right protected under the New York City Human Rights Law, and all Respondents knew or should have known that if the text of PHL §2.61 "only" permitted employers to provide an accommodation to an employee that physically removed the employee from their job, then Respondents knew or should have known that there was no point in having any Vaccine Deficient employee make a request for an accommodation that was scheduled to be terminated.

217. Respondents acts of allowing Petitioners to make two and three requests for religious accommodations that were never going to be provided based on their interpretation of §2.61, was an act of retaliation and harassment in violation of the NYCHRL.

218. According to STAT, an online reporting database that gathers data from the Federal Health Resources and Services Administration, New York Hospitals collectively have received almost $20 billion from the federal Covid -19 pandemic Provider Relief Fund, which congress funded to the tune of $178 Billion[4], which funds could be used to provide the PAPR's each employee could have used to remain in their jobs. (See **Exhibit 44** – Hospital Federal Funding Report)

---

[4] STAT databased can be accessed at https://www.statnews.com/2021/09/24/covid-19-relief-money-providers-in-your-state/

# FIFTH CAUSE OF ACTION
## HARASSMENT

261. Petitioners re-alleges each and every allegation set forth in the previous paragraphs of this Complaint as though fully set forth herein.

262. Petitioners claims of retaliation also sets forth facts to substantiate a claim for harassment pursuant to the NYCHRL.

263. On November 5, 2021, OSHA published its final Health Emergency Temporary Standards for Covid-19 Health Care Staff which states as follows:

§ 1910.501 Vaccination, testing, and face coverings.

(a) Purpose. This section is intended to establish minimum vaccination, vaccination verification, face covering, and testing requirements to address the grave danger of COVID-19 in the workplace, and to preempt inconsistent state and local requirements relating to these issues, including requirements that ban or limit employers' authority to require vaccination, face covering, or testing, regardless of the number of employees.

Note 1 to paragraph (a): This section establishes minimum requirements that employers must implement. Nothing in this section prevents employers from agreeing with workers and their representatives to additional measures not required by this section and this section does not supplant collective bargaining.

264. In the final OSHA Health ETS, it expressly exempts person from the OSHA vaccine requirements those who have a disability or a sincerely held religious belief, practice or observance that conflict with the vaccination requirement.

265. Because the Final Rule expressly pre-emps New York's PHL §2.61, as of November 5, 2021, Respondents' act of placing each Petitioner on leave without pay and then subsequently scheduling them to be terminated on December 31, 2021 was beyond the pale harassment

and subjects Respondents to punitive damages in an amount that should punish them for their total disregard for the law.

266.  Respondents and each of them have recklessly disregarded the Human Rights of all Petitioner by over and over denying them the available reasonable accommodations that could have made the work place safe.

## REMEDIES

a.  Petitioners seek immediate reinstatement to their positions at the same pay and seniority and benefits.

b.  Petitioners seek back pay and compensatory damages;

c.  Petitioners seek punitive damages in an amount to be determined by a jury; and

d.  Attorney fees, costs and any other available remedy.


Dated: October 29, 2024                          Respectfully submitted,


                                                 /s/ *DONNA ESTE - GREEN*
                                                 Donna Este-Green, Esq. Bar#2517688
                                                 *Attorney for Class Plaintiffs*
                                                 *25 Fairway Dr.*
                                                 *Hempstead, NY 11550*
                                                 Women of Color for Equal Justice