**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHAEL TOUSSAINT, ESTE PALLAS, PETRICE THOMPSON, BERTRAM SCOTT, JANET GARCIA, DOMINIQUE GUERCIN CHONG, ANGELA RICHARDSON, THERESA CROSSMAN, LINDON BAIN, MARTINA MOSEJCZUK, WILLIS HARRIS, NICOLE HUDSON-JACK, TANYEKA BESWICK, TAMARA ANGLIN, JEAN-WILLY BAPTISTE, BEVERLY WILLIAMS, CAROL BRYAN, STEPHANIE PAGANO, SHANLYS BYFIELD, HEDREN LECKIE, PAMELA  PHILLIP-RIVERA, KRISTY TANTILLO, CHERYL THOMPSON, MARIE PAULINE SALVIA, MARIEJO BARRIE, KIMBERLY GREENBERG, EDNA RODOLFO, KAREN JAMES, NORA SAMMON, and MARIE BISH, individually and on behalf of similarly situated individuals, | |
| Plaintiffs, | |
| v. | |
| ONE BROOKLYN HEALTH SYSTEM/BROOKDALE HOSPITAL MEDICAL CENTER, NEW YORK HEALTH & HOSPITALS/BELLEVUE, NEW YORK HEALTH & HOSPITALS/ WOODHULL HOSPITAL, MONTEFIORE HEALTH SYSTEM & MONTEFIORE MEDICAL CENTER, STATEN ISLAND UNIVERSITY HOSPITAL NORTHWELL HEALTH, INC., NEW YORK PRESBYTERIAN HOSPITAL & HEALTH CARE SYSTEM, MT. SINAI HEALTH SYSTEM, BROOKHAVEN REHAB & HEALTH CARE CENTER, NYU LANGONE HOSPITALS, PRIDE GLOBAL/PRIDE HEALTH, VNSW COMMUNITY CARE NAVIGATION, INC. D.B.A VISITING NURSES SERVICE OF WESTCHESTER and DOES 1-20 | |
| Defendants | **AMENDED COMPLAINT PROPOSED CLASS ACTION**<br><br>**JURY DEMAND**<br><br>INDEX No.: 24-cv-07573 RPK-LKE |

**INTRODUCTION**

1. This is a civil rights wrongful discharge action brought by Plaintiffs in their individual capacity and on behalf of any other class of health care workers (collectively Plaintiff) for the discriminatory discharge of Plaintiffs for exercising their right to object to submitting to and providing proof of Defendants mandated Covid-19 vaccine/immunization medical treatment on religious grounds, which is a fundamental right protected under 29 U.S.C. §669 Sec. 20(a)(5) of the OSH Act for which Plaintiffs seeks monetary damages, job reinstatement, backpay, compensatory, and punitive damages under the OSH Act private right of action contained in 29 U.S.C. §660 Subsection 11(c)(1) & (2) of the OSH Act.

2. Plaintiffs statutory discrimination claim is also based a claim of federal preemption of the New York State Public Health Law mandating healthcare workers to provide proof of Covid-19 vaccination (NYSDOH Vaccine Mandate) by the federal OSH Act pursuant to 29 U.S.C. §667 Sec. 18(a).

3. Alternatively, Plaintiffs pursue this action pursuant to 42 U.S.C. §1983 of the 1964 Civil Rights Act for Defendants conspiracy with the State of New York Department of Health under color of law to deprive Plaintiffs of their statutory federal OSHA Act rights and to deprive Plaintiffs of their fundamental First Amendment Free Exercise Clause and 14th Amendment substantive due process rights to choose their own medical treatment as declared by the U.S. Supreme Court in the *Jacobson v. Massachusetts*, 197 U.S. 11, 26 (1905)[1] and in *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)[2] and object to Defendants

---

[1] Held: That every person has "the inherent right of every freeman to care for his own body and health in such way as to him seems best…. liberty secured by the Constitution of the United States to every person within its jurisdiction."

[2] Cruzon: held –("we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition." – based on substantive Due Process)

enforcement of the New York State public health law mandating Defendants to discharge Plaintiffs for objecting to provide proof of Covid-19 vaccination. *See Health and Hospital Corporation of Marion County et al v. Talevski*, 599 U.S. 166 (2023)

## JURISDICTION AND VENUE

4.  This Court has original jurisdiction pursuant to 28 U.S.C. §1331 regarding the federal question of preemption of the Federal OSHA Act of 1970 over the New York State Vaccine Mandate law, as well original jurisdiction pursuant to the OSH Act 29 USC §660 Section 11(c)(2) (which gives United States district courts exclusive jurisdiction over "any such action" to "order all appropriate relief")  for wrongful discharge of employees in violation of the OSH Act Section 11(c)(1).

5.  Venue is proper under 28 U.S.C. §§ 1391(a)(1) and (2) in that the Western District of New York is a judicial district in which the defendant does business and is the judicial district in which the events giving rise to the claim occurred.

6.  Plaintiffs are not required to exhaust administrative remedies pursuant to the 29 U.S.C. §660 Section 11(c)(2) because the statute only states that an employee "may" file a complaint with the OSHA Secretary and does not contain any mandatory language.

## JURY DEMAND

7.  Plaintiffs hereby demand a trial by jury on all issues properly triable thereby pursuant to Fed.R.Civ.P. §38(b).

## PARTIES

### A.  PLAINTIFFS

### BROOKDALE EMPLOYEES

8.  Plaintiff, Rachel. Toussaint ("R. Toussaint") is an African-American female Registered Nurse who was employed over 11 years by Defendant Brookdale Hospital and Medical Center and One Brooklyn Health System in Brooklyn, New York (hereafter "Brookdale) when the Covid-19 Pandemic state of emergency continued in 2021.

9.  On or around September 16, 2021, Defendant Brookdale notified R. Toussaint that as part of the safety requirements of her workplace she was required to provide proof that she had received the Covid-19 vaccine as a mandated by the New York State Department of Health pursuant to Public Health Law §16 and/or §PHL 2.61 and/or as a mandated by Brookdale's employment policies (collectively the "Mandate").

10. Sometime in September 2021, Defendant Brookdale's Chief Executive Officer who is a medical physician announced in a newsletter/press release that "the Covid-19 vaccine is the appropriate measures to help protect against the spread of the evolving COVID-19 as part of infection control to protect the health and well-being of residents and associates during the Covid-19 Pandemic."

11. R. Toussaint submitted to Brookdale several written objections to taking the Covid-19 vaccine seeking an exemption from the Mandate based on religious grounds because her religious beliefs in the Bible required her to trust God to protect her from experiencing a serious Covid-19 infection and her religious practice based on her trust in God was to refuse government pharmaceuticals and use "the leaves of the trees are for the healing of the nations" based on Revelation 22:2, which belief and practice required her to object to submitting to taking the Covid-19 vaccine.

12. R. Toussaint also asked to be allowed to purchase her own OSHA approved Powered Air Purifying Respirator (PAPR) safety respirator mask so she could remain unvaccinated based

on her religious practices, keep her job while also maintaining a safe workplace for patients and co-workers.

13. Defendant Brookdale denied R. Toussaint's request for exemption from the Covid-19 vaccine Mandate despite her objection on religious grounds.

14. On or around December 17, 2021, Defendant Brookdale placed R. Toussaint on leave without pay because she continued to refuse to submit to the Covid-19 vaccine and she was informed that if she did not get the Covid-19 vaccine by 5pm December 31, 2021 she would be terminated.

15. On December 31, 2021, Defendant Brookdale terminated R. Toussaint for exercising her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

16. Before her termination, from September 2021, until December 16, 2021, R. Toussaint adhered to OSHA and Brookdale workplace safety requirements which included, wearing a surgical type mask, washing-of hands, and wearing other personal protective equipment required under certain OSH Act employee regulations and she submitted to periodic Covid-19 testing as required by Brookdale's employment policy.

17. At no time after R. Toussaint objected to taking the Covid-19 vaccine did Defendant Brookdale provide R. Toussaint an OSHA approved PAPR mask that is 99.97% effective at preventing employee exposure to any airborne hazards.

18. Defendant Brookdale failed to provide and denied R. Toussaint's request to purchase her own PAPR so she could continue to work safely unvaccinated according to her religious practice described above.

19. Defendant Brookdale also failed to disclose to R. Toussain that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

20. Since her termination, R. Toussaint has sought employment at other healthcare facilities in New York State and has not been able to find any healthcare jobs equivalent to R. Toussaint's Brookdale job that does not require Covid-19 vaccination.

21. Patrice Thompson ("P. Thompson") was employed by Defendant Brookdale over 27 years within the Schulman & Schachne Institute for Nursing and provided face to face patient care as a Certified Nurse's Aide during the Covid-19 Pandemic state of emergency in 2021.

22. Ms. Thomas is an African-American female Seventh-Day Adventist Bible Believer who follows the Biblical Plant-based Lifestyle Medicine and uses plant-based food and herbs as medicine.

23. On or around September 16, 2021, Defendant Brookdale notified P. Thompson that as part of the safety requirements of her workplace she was required to provide proof that she had received the Covid-19 vaccine as a mandate by the New York State Department of Health pursuant to Public Health Law §16 and/or §PHL 2.61 and/or as a mandated by Brookdale's employment policies. (collectively the "Mandate").

24. P. Thomas submitted to Brookdale several written objections to taking the Covid-19 vaccine seeking an exemption from the Mandate based on religious grounds because her religious beliefs in the Bible required her to trust God to protect her from experiencing a serious Covid-19 infection and her religious practice based on her trust in God was to refuse government pharmaceuticals and use "the leaves of the trees are for the healing of the nations" based on Revelation 22:2, which belief and practice required her to object to submitting to taking the Covid-19 vaccine.

25. P. Thomas also requested to purchase her own Powered Air Purifying Respirator (PAPR) respirator mask so she could remain unvaccinated, keep her job while also maintaining a safe workplace for patients and co-workers.

26. Defendant Brookdale denied P. Thomas' requests for exemption from the Covid-19 vaccine Mandate despite her objection on religious grounds.

27. On December 17, 2021, Defendant Brookdale placed P. Thomas on leave without pay because she continued to refuse to take the Covid-19 Vaccine based on her religious beliefs and practices and she was informed that if she did not get the Covid-19 Vaccine by 5pm December 31, 2021 she would be terminated.

28. Defendant Brookdale also failed to disclose to P. Thomas that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

29. On December 31, 2021, P. Thomas was terminated because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

30. At no time after P. Thomas objected to the Brookdale's mandate that she take a Covid-19 vaccine did Defendant Brookdale provide P. Thomas an OSHA approved PAPR respiratory mask safety equipment that is 99.97% effective at preventing employee exposure to any airborne hazard, including the airborne viral hazard that causes Covid-19.

31. Neither did Defendant Brookdale permit P. Thomas to purchase her own PAPR safety equipment to keep her job.

32. Before her termination, from September 2021, until December 16, 2021, P. Thomas adhered to OSHA and Brookdale workplace safety requirements which included, wearing a surgical type mask, washing-of hands, and wearing other personal protective equipment required under certain OSH Act employee regulations and she submitted to periodic Covid-19 testing as required by Brookdale's employment policy.

33. Since her termination, P. Thomas has sought employment at other healthcare facilities in New York State and has not been able to find any healthcare jobs equivalent to her Brookdale job that does not require Covid-19 vaccination.

34. Este Pallas (E. Pallas) is a Jewish woman and a registered dietician who worked for Defendant Brookdale for approximately 5 years.

35. E. Pallas could perform the essential functions of her job entirely remote.

36. On or around September 16, 2021, Defendant Brookdale demanded that E. Pallas submit to receive the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

37. On September 18, 2021, A. Pallas submitted a request and appeal(s) for an exemption from the Mandate based on religious grounds explaining, in summary, that her faith in the Torah required her to trust G*d to protect her from disease and her religious practice was to not rely on the government pharmaceutical method, which religious belief and practice required her to object to submitting to the Covid-19 vaccine.

38. On or around November, 2021, E. Pallas' requests and appeals for exemption from the Covid-19 vaccine Mandate were rejected by Defendant Brookdale.

39. E. Pallas also requested that she be allowed to work her job remotely because the essential functions of her job could be performed remote.

40. E. Pallas also requested Defendant Brookdale to provide her with an OSHA approved PAPR respirator safety mask so she could continue to perform her job, and she offered to pay for the PAPR, if remote work was not permitted.

41. Defendant Brookdale denied E. Pallas any exemption from the Covid-19 vaccine Mandate and refused to allow her to work remote and refused to provide or allow her to purchase a PAPR respirator mask so that she could continue to work her job safely.

42. Between September 16, 2021 until December 16, 2021, E. Pallas abided by Defendant Brookdale's Covid-19 workplace safety requirements which included the wearing of a surgical type mask, washing her hands and she submitted to periodic testing.

43. On December 17, 2021, E. Pallas was placed on leave without pay because she continued refuse based on religious practice to take the Covid-19 vaccine as mandated by Brookdale and she was informed that if she did not receive the Covid vaccine by December 31, 2021 that she would be terminated at 5pm on December 31, 2021.

44. Defendant Brookdale also failed to disclose to E. Pallas that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

45. E. Pallas was terminated on December 31, 2021 because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

46. continued to refuse to take the Covid-19 vaccine based on her religious beliefs and practice described above.

47. Since her termination, E. Pallas sought employment at other healthcare facilities in New York State and has not been able to find any job that does not require Covid vaccination.

48. E. Pallas had to move out of the State of New York to obtain a lower paying job where she currently works.

49. Janet Garcia (J. Garcia) is a Latina female Bible believer who worked for Defendant Brookdale and had patient and co-worker contacts.

50. On or around September 16, 2021, Brookdale notified J. Garcia that she was required to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

51. J. Garcia submitted requests and an appeal(s) to obtain an exemption from the Mandate based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from any serious illness from Covid-19 and religious practice of trusting God prevent her from relying on the government pharmaceuticals to prevent her from an infection, which religious belief and practice required her to object to submitting to the Covid-19 vaccine.

52. J. Garcia also requested an OSHA approved PAPR safety equipment so she could continue to work her job unvaccinated based on her religious practices and beliefs.

53. Defendant Brookdale denied J. Garcia her request and appeals for exemption from the Covid-19 vaccine Mandate and refused to provide her with the OSHA approved PAPR safety mask equipment and neither did Defendant Brookdale approve of J. Garcia purchasing her own PAPR so she could continue to work her job unvaccinated.

54. Defendant Brookdale also failed to disclose to J. Garcia that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

55. During the period between September 16 and December 16, 2021, J. Garcia adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and she submitted to the required periodic testing.

56. On December 17, 2021, J. Garcia was placed on leave without pay because she continued to refuse to submit to taking the Covid-19 vaccine based on her religious practice described above and she was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

57. On December 31, 2021, Defendant Brookdale terminated J. Garcia because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

58. Since her termination, J. Garcia has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.

59. Angela Richardson (A. Richardson) is an African-American, female Bible Believer who worked for Defendant Brookdale over 22 year as a Patient Services Associate who could work her job entirely remote.

60. On or around September 16, 2021, Brookdale notified A. Richardson that she was required as part of workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

61. A. Richardson submitted requests and an appeal(s) to obtain an exemption from taking the mandated Covid-19 vaccine based on religious grounds wherein she explained, in  summary, that her religious beliefs in the Bible required her to trust God to prevent her from getting any serious Covid-19 infection and religious practice of faith required her not to rely on the government pharmaceuticals to prevent disease, which belief and religious practice required her to object to submitting to the Covid-19 vaccine.

62. A. Richardson also requested an OSHA approved PAPR safety equipment so she could continue to work her job safely unvaccinated based on her religious practices and she requested

to work her job remotely because she was only required to set appointments for patients that could be done remotely.

63. Defendant Brookdale denied A. Richardson any exemption from the Covid-19 Mandate.

64. Defendant Brookdale also refused to provide the OSHA approved PAPR safety mask equipment and neither did Defendant Brookdale approve of A. Richardson purchasing a PAPR so she could continue to work her job safely.

65. Defendant Brookdale also refused to allow A. Richardson to perform her job remotely so she could continue to perform her job which could be performed remotely.

66. Defendant Brookdale also failed to disclose to A. Richardson that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

67. During the period between September 16 and December 16, 2021, A. Richardson adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and she submitted to the required periodic testing.

68. On or around December 17, 2021, A. Richardson was placed on leave without pay because she continued to refuse to submit to take Covid-19 vaccine based on her religious belief and practice described above and she was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

69. On December 31, 2021, Defendant Brookdale terminated A. Richardson from her job because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

70. Since her termination, A. Richardson has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.

71. Teresa Crossman (T. Crossman) is an African-American female Bible Believer who worked for Defendant Brookdale for over 11 years working as a Staff Occupational Therapist (OTR) that provided face to face patient care.

72. On or around September 16, 2021, Brookdale notified T. Crossman that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

73. T. Crossman submitted requests and an appeal(s) to obtain an exemption from the Covid-19 vaccine Mandate based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from experiencing a serious Covid-19 viral infection and her religious practice required her not rely on the government pharmaceuticals to stop disease, which religious belief and practice required her to object to submitting to the Covid-19 vaccine.

74. T. Crossman also requested Defendant Brookdale to provide her with an OSHA approved PAPR safety equipment so she could continue to work her job safely unvaccinated without losing her job.

75. Defendant Brookdale denied T. Crossman's requests and appeals for an exemption from the Covid-19 vaccine Mandate and refused to provide her with the OSHA approved PAPR safety mask equipment.

76. During the period between September 16 and December 16, 2021, T. Crossman adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical

mask, washing hands before and after interaction with any patient and she submitted to the required periodic testing.

77. On or around December 17, 2021, T. Crossman was placed on leave without pay because she continued to refuse to submit to take the Covid-19 vaccine Mandate on religious grounds and was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

78. Defendant Brookdale also failed to disclose to T. Crossman that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

79. On December 31, 2021, Defendant Brookdale terminated T. Crossman from her job because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

80. Since her termination, T. Crossman has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.

81. Duche Chery (D. Chery) is an African-American female Bible Believer who worked for Defendant Brookdale working as Patient Services Association for over 19 years and who could perform the essential functions of the job entirely remote.

82. On or around September 16, 2021, Brookdale notified D. Chery that she was required as part of workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

83. D. Chery submitted requests and an appeal(s) to obtain an exemption from the Covid-19 vaccine Mandate based on religious grounds wherein she explained, in summary, that her

religious beliefs in the Bible required her to trust God to protect her from a Covid-19 infection and her faith in the Bible required her to not rely on the government pharmaceuticals to protect her from disease, which belief and practice required her to object to taking the Covid-19 vaccine.

84. D. Chery also requested from Defendant Brookdale an OSHA approved PAPR safety equipment so she could continue to work her job safely unvaccinated based on her religious practices and beliefs described above without losing her job.

85. Defendant Brookdale denied D. Chery any exemption from the Covid-19 vaccine Mandate and failed to provide her with an OSHA approved PAPR safety mask equipment or any respiratory safety equipment that provided at least 99.7% efficacy in shielding workers from any airborne hazard including the airborne virus that causes Covid-19.

86. During the period between September 16 and December 16, 2021, D. Chery adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and she submitted to the required periodic testing.

87. On or around December 17, 2021, D. Chery was placed on leave without pay because she continued to refuse to submit to the Covid-19 vaccine Mandate based on her religious beliefs and practices and was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

88. Defendant Brookdale also failed to disclose to D. Chery that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

89. On December 31, 2021, Defendant Brookdale terminated D. Chery from her job because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

90. Since her termination, D. Chery has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.

91. Plaintiff Lindon Bain (L. Bain) is an African-American Bible believing male Seventh Day Adventist who worked for Defendant Brookdale for over 22 years as the lead plumber in the Engineering Department that did not provide direct face to face patient care.

92. On or around September 16, 2021, Brookdale notified L. Bain that he was as required part of workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

93. L. Bain submitted a request to obtain an exemption from the Covid-19 vaccine Mandate based on religious grounds wherein he explained, in summary, that his religious beliefs in the Bible required him to trust God to protect him from a serious Covid-19 infection and his religious practice required him to specifically use Biblical plant based herbal  medicine to prevent a Covid-19 infection and not to rely on the government pharmaceuticals to prevent the disease, which belief and practice required him to object to submitting to the Covid-19 vaccine.

94. L. Bain also requested an OSHA approved PAPR safety equipment so he could continue to work his job safely unvaccinated based on his religious beliefs and practice described above.

95. Defendant Brookdale denied L. Bain any exemption from the Covid-19 vaccine Mandate and failed to provide him with an OSHA approved PAPR safety mask equipment or any respiratory

safety equipment that provided at least 99.7% efficacy in shielding workers from any airborne hazard including the airborne virus that causes Covid-19.

96. During the period between September 16 and December 16, 2021, L. Bain adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and he submitted to the required periodic testing.

97. On or around December 17, 2021, L. Bain was placed on leave without pay because he continued to refuse to take the Covid-19 vaccine based on his religious beliefs and practices described above and he was informed that if he did not get vaccinate per the Mandate by December 31, 2021, he would be terminated at 5pm on December 31, 2021.

98. Defendant Brookdale also failed to disclose to L. Bain that he had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

99. On December 31, 2021, Defendant Brookdale terminated L. Bain from his job because he exercised his religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

100. Since his termination, L. Bain has sought employment at other healthcare facilities in New York State to remain in his career and has not been able to find any healthcare job that does not require Covid vaccination.

101. Pamela Phillip-Rivera (P. Rivera) is a Bible believing Latina woman who worked for Defendant Brookdale for over three (3) years in Health Information Management, which is a job that the essential functions of the job could be performed remotely because Brookdale stores patient medical records as electronic records.

102. On or around September 16, 2021, Brookdale notified P. Phillips-Rivera that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

103. P. Phillips-Rivera submitted requests and appeal(s) to obtain an exemption from the Mandate based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from a Covid-19 infection and her religious practice from the Bible required her to Biblical plant herbal medicine and not to rely on the government pharmaceuticals to prevent disease, which belief and practice required her to object to submitting to the Covid-19 vaccine.

104. P. Phillips-Rivera also requested to work remotely or alternatively to obtain an OSHA approved PAPR safety equipment so she could continue to work her job safely.

105. Defendant Brookdale denied P. Phillips-Rivera any exemption from the Mandate and failed to provide her with an OSHA approved PAPR safety mask equipment or any respiratory safety equipment that provided at least 99.7% efficacy in shielding workers from any airborne hazard including the airborne virus that causes Covid-19.

106. During the period between September 16 and December 16, 2021, P. Phillips-Rivera adhered to Defendant Brookdale's Covid-19 workplace safety rules that included wearing a surgical mask, washing hands before and after interaction with any patient and he submitted to the required periodic testing.

107. On or around December 17, 2021, P. Phillips-Rivera was placed on leave without pay because she continued to refuse to submit to taking the Covid-19 vaccine Mandate based on her religious beliefs and practices and was informed that if she did not get vaccinate per the Mandate by December 31, 2021, she would be terminated at 5pm on December 31, 2021.

108. Defendant Brookdale also failed to disclose to P. Phillips-Rivera that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

109. On December 31, 2021, Defendant Brookdale terminated P. Phillips-Rivera from her job because she exercised her religious beliefs and practice of refusing to submit to taking the Covid-19 vaccine Mandate.

110. Since her termination, P. Phillips-Rivera has sought employment at other healthcare facilities in New York State to remain in her career and has not been able to find any healthcare job that does not require Covid vaccination.

111. Martina Mosejczuk (M. Mosjczuk) is a female, African-American Bible Believer and former employee of Defendant Brookdale.

112. On or around September 16, 2021, Brookdale notified M. Mosjczuk that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

113. M. Mosejczuk submitted requests or an appeal(s) to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from a serious Covid-19 infection and her religious practice was to not rely on the government pharmaceuticals to prevent disease, which belief and practice required her to object to submitting to taking the Covid-19 vaccine.

114. M. Mosejczuk also requested a OSHA approved PAPR safety equipment so she could continue to work her job safely and unvaccinated without losing her job.

19

115. M. Mosjczuk was placed on leave without pay on December 17, 2021 because she remained unvaccinated based on her religious beliefs and practice described above and she was informed that if she did not get vaccinate she would be terminated at 5pm on December 31, 2021.

116. Defendant Brookdale also failed to disclose to M. Mosjezjuk that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

117. M. Mosjczuk was terminated on December 31, 2021 because she continued to refuse to take the Covid-19 vaccine Mandate based on her religious practice and beliefs described above.

118. Since her termination, M. Mosjczuk has sought employment at other healthcare facilities in New York State and has not been able to find a comparable job that does not require Covid vaccination.

119. At all relevant times Brookdale refused to provided M. Mosjczuk with a Powered Air Purifying Respirator (PAPR) mask (that she would pay for), or remote work so she could continue to work her job while practicing her faith of refusing to be Covid-19 vaccinate.

120. In 2021, Beverly Williams (B. Williams) was an employee of Defendant Brookdale working as a Telephone Operator who could work her job entirely remote.

121. B. Williams worked at Brookdale as a Telephone Operator approximately 10 years and is an African-American, female Bible Believer.

122. On or around September 6, 2021, Brookdale notified B. Williams that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

123. B. Williams submitted a written request to Defendant Brookdale to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on

religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from experiencing a serious Covid-19 infection and her religious practice and faith in the Bible required that she not rely on the government pharmaceuticals to prevent disease, which belief and practice required her to object to submitting to taking the Covid-19 vaccine.

124.  Defendant Brookdale denied B. Williams requests and/or appeals for exemption from the Covid-19 Mandate.

125.  B. Williams was placed on leave without pay on December 17, 2021 due to her unvaccinated status based on her religious practice and was informed that she would be terminated at 5pm on December 31, 2021 if she did not submit to the Covid-19 vaccine injection.

126.  Defendant Brookdale also failed to disclose to B. Williams that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

127.  On December 31, 2021, Defendant Brookdale terminated the employment of B. Williams because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

128.  At all relevant times Brookdale refused to provided B. Williams with a Powered Air Purifying Respirator (PAPR) mask, and she was not provided with the option to remote work so she could continue to work her job while practicing her faith of refusing to be Covid-19 vaccinate.

129.  Since her termination, B. William has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

130. Carol Bryan (C. Bryan) was an employee of Defendant Brookdale working as a Recreation Activity Associate responsible for planning patient activities, but she was not responsible for direct patient care.

131. C. Bryan has worked at Brookdale for over 10 years and is an African-American, female Bible Believer Christian.

132. On or around September 6, 2021, Brookdale notified C. Bryan that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

133. C. Bryan submitted a written requests to Defendant Brookdale to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from experiencing a serious Covid-19 infection and her religious practice based on her trust in God was to refuse government pharmaceuticals to prevent disease, which belief and practice required her to object to submitting to taking the Covid-19 vaccine.

134. Defendant Brookdale denied C. Bryan request for exemption from the Covid-19 Mandate based on B. Williams.

135. C. Bryan was placed on leave without pay on or around December 17, 2021 due to her unvaccinated status and was informed that she would be terminated at 5pm on December 31, 2021 if she did not submit to the Covid-19 shot.

136. Defendant Brookdale also failed to disclose to C. Bryan that she had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

137. On or around December 31, 2021, Defendant Brookdale terminated the employment of C. Bryan because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

138. Since her termination, C. Bryan has sought employment at other healthcare facilities in New York State and has not been able to find a comparable job that does not require Covid vaccination.

139. At all relevant times Brookdale refused to provided C. Bryan with a Powered Air Purifying Respirator (PAPR) mask (that she would pay for), or remote work so she could continue to work her job while practicing her faith of refusing to be Covid-19 vaccinate.

140. Since her termination, C. Bryan has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

## NEW YORK HEALTH & HOSPITALS EMPLOYEE(S)

141. Bertram Scott (B. Scott) was an employee of Defendant New York Health & Hospital (NYHH Woodhull) for over 25 serving as a Sr. Motor Vehicle Supervisor in the Transportation Department.

142. B. Scott is an African-American male Bible believing Seventh-Day Adventist Christian.

143. Sometime in August, 2021, NYHH Woodhull notified B. Scott that he was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Brookdale's employment policy (collectively the "Mandate").

144. B. Scott submitted written requests and/or appeal(s) to Defendant NYHH Woodhull to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing

her job based on religious grounds wherein he explained, in summary, that his religious beliefs in the Bible required him to trust God to protect him from experiencing a serious Covid-19 infection and his religious practice was to not rely on the government pharmaceuticals to prevent Covid-19 infection, which belief and practice required him to object to submitting to taking the Covid-19 vaccine.

145. Defendant Brookdale denied B. Scott's request(s) and/or appeals for exemption from the Covid-19 Mandate.

146. B. Scott was placed on leave without pay sometime at the end of August, 2021 due to his unvaccinated status and was informed that he would be terminated on November 1, 2021 if he did not submit to the Covid-19 vaccine.

147. Defendant NYHH Woodhull failed to disclose to B. Scott that he had the right under the OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

148. On November 1, 2021, Defendant NYHH Woodhull terminated the employment of B. Scott because he exercised his religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

149. Since his termination, B. Scott has sought employment at other healthcare facilities in New York State and has not been able to find a comparable job that does not require Covid vaccination.

150. At all relevant times Defendant NYHH refused to provided B. Scott with a Powered Air Purifying Respirator (PAPR) mask so he could continue to work his job while practicing his faith of refusing to be Covid-19 vaccinate based on the Bible scripture that instructs not to defile his body.

151. Shanlys Byfield (S. Byfield) was an employee of Defendant New York City Health and Hospital/Bellevue (Bellevue) working as Patient Care Assistant responsible for assisting with direct Ambulatory care of patients.

152. S. Byfield worked at Bellevue for over 5 years and is an African-American, female Bible Believer who has worked in the healthcare industry approximate 10 years.

153. At all relevant times, S. Byfield was notified by Defendant Bellevue that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Bellevue's employment policy (collectively the "Mandate").

154. S. Byfield requested to Defendant Bellevue to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from experiencing a serious Covid-19 infection and her religious practice required her to not rely on the government pharmaceuticals to prevent a Covid-19 infection, which belief and practice required her to object to taking the Covid-19 vaccine.

155. Defendant Bellevue refused to provide S. Byfield an exemption and failed to provide her with a Powered Air Purifying Respirator mask so she could continue to work with the mask to protect her health and the health of follow workers.

156. S. Byfield was placed on leave without pay on September 27, 2021 because she remained unvaccinated due to her religious beliefs and practice and was informed that she would be terminated on November 29, 2021 if she would not get vaccinated.

157. On November 29, 2021, S. Byfield was terminated by Defendant Bellevue because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

158.    Since her termination, S. Byfield has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

159.    Defendant Bellevue also failed to disclose to S. Byfield that she had the right pursuant to OSH Act 29 U.S.C. §669 Sec. 20(a)(5) to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

### THE BROOKLYN HOSPITAL CENTER EMPLOYEES

160.    Dominique Guercin Chong (D. Chong) is a female Seventh-Day Adventist Bible believer who worked over 22 years for Defendant The Brooklyn Hospital Center, One Brooklyn Hospital (TBHC) as a Physical Therapist Assistant with face to face patient contact.

161.    Sometime on or around October 20, 2021, TBHC notified D. Chong that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on TBHC's employment policy (collectively the "Mandate").

162.    D. Chong submitted a request to TBHC to be exempt from taking the Covid-19 vaccine based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God and her religious practice required to use Biblical plant-based medicine, based on the scripture in Revelations 22:20 where it says that "the leaves of the tree were for the healing of the nations" and that religious beliefs and practice required her to object to taking  the government required Covid-19 vaccine.

163.    Specifically, D. Chong religious beliefs includes Biblical religious medical practice of using whole plant-based medicine, which she has done for 30 years wherein she has not consumed any animal products, nor consumed any alcohol, nor smokes and she tries to consume mostly organic

Non-GMO plants and she relies almost exclusively on plant herbal remedies consistent with her religious Biblical medical practice of plant-based lifestyle medicine to prevent disease.

164.    D. Chong also agreed to periodic Covid-19 testing so that she could continue to work in her job in her unvaccinated status.

165.    Defendant TBHC refused D. Chong request to be exempted from taking the Covid-19 vaccine under the Mandate and refused to allow her to return to work unvaccinated based on the Mandate.

166.    D. Chong was placed on leave without pay on November 23, 2021 because she continued to refuse to take the Covid-19 vaccine Mandate based on her religious beliefs and practices described above and she was informed that she would be terminated on December 1, 2021, if she continued to not receive and provide proof of taking the Covid-19 vaccine.

167.    On December 31, 2021, D. Chong was terminated because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

168.    Since her termination, D. Chong has since sought employment at other healthcare facilities in New York State and has not been able to find any healthcare related job that does not require Covid vaccination and that will provide exemption to an unvaccinated person seeking to be hired.

169.    TBHC also refused to provide C. Chong with a Powered Air Purifying Respirator (PAPR) mask so she could continue to work unvaccinated, and denied her the ability to take Covid-19 test periodically and rely on her religious medical practices so that she could continue to work.

170.    TBHC also failed to disclose to C. Chong that she had the right to pursuant to 29 U.S.C. §669 Sec. 20(a)(5) of the OSH Act to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

**STATEN ISLAND UNIVERSITY HOSPITAL AND NORTHWELL HEALTH EMPLOYEES**

171.    Stephanie Pagano (S. Pagano) is a female Christian believer and licensed Master Social Worker who worked for Staten Island University Hospital and Northwell Health and (Northwell) for over

two (2) years as a Case Manager responsible for managing the administration of patient admissions, discharge and care for 55 to 90 patients at a time.

172. Sometime around September 27, 2021, Northwell notified P. Pagano that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and mandated by Northwells employment policy to enforce state public health law (collectively the "Mandate").

173. Sometime after receiving the notice of the Mandate, P. Pagano submitted a request to Northwell to be exempt from taking the Covid-19 vaccine while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from experiencing a Covid-19 infection and her faith in God required her to not rely on the government pharmaceuticals for prevention of the Covid-19 infection, which belief and practices required her to object to submitting to the Covid-19 vaccine.

174. P. Pagano also supplied a letter from a Rev. R. Reband, II Lead Pastor of Oakland Hills Community Church to support her religious exemption request.

175. P. Pagano's job could be performed remotely; so, she requested to work remote so she could continue to refuse to take the Covid-19 vaccine based on her religious grounds.

176. P. Pagano also requested an OSHA approved PAPR safety equipment so she could continue to work her job unvaccinated based on your religious beliefs.

177. Defendant Northwell refused to provide S. Pagano an exemption from the Covid-19 vaccine Mandate to allow her to continue to work her job unvaccinated based on her religious practices and beliefs that required her to refuse the Covid-19 vaccine and Defendant refused to allow her to perform her job remotely.

178. Defendant Northwell also failed to provide S. Pagano a Powered Air Purifying Respirator (PAPR) mask so that she could continue to work and not be a risk to patients, co-workers or to herself.

179. Defendant Northwell again failed to inform S. Pagano that she had the right pursuant to 29 U.S.C. §669 Sec. 20(a)(5) of the OSH Act to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

180. On or around October 30, 2021, S. Pagano was terminated by Defendant Northwell because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

181. Since her termination, S. Pagano has sought employment in the healthcare industry in New York and has been unable to find any healthcare job that does not require new hires to submit to the Covid-19 vaccine.

182. Kristy Tantillo (K. Tantillo) is a female Christian who has worked for Defendant Staten Island University Hospital/Northwell Health (Northwell) for over 16 years as a Registered Nurse Case Manager.

183. Sometime before September 29, 2021, Northwell notified K. Tantillo that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and as a mandate based on Brookdale's employment policy of enforcing state public health laws (collectively the "Mandate").

184. Sometime after receiving notice, K. Tantillo submitted a written request to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from and prevent her from experiencing a serious Covid-19 infection and her religious practice of trusting God

required her not to rely on the government pharmaceuticals for protection from the Covid-19 disease, which belief and practice required her to object to submitting to the Covid-19 vaccine.

185. Defendant Northwell denied K. Tantillo the request for an exemption from taking the Covid-19 vaccine.

186. Sometime after October 30, 2021, K. Tantillo was terminated she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

187. Before her termination, Defendant Northwell allowed K Tantillo to work following Defendants PPE and distancing protocols while unvaccinated.

188. Northwell failed to provide K. Tantillo a Powered Air Purifying Respirator (PAPR) mask so that she could continue to work and not be a risk to patients, co-workers or to herself.

189. Northwell also failed to inform K. Tantillo that she had the right pursuant to 29 U.S.C. §669 Sec. 20(a)(5) of the OSH Act to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

190. Since her termination, K. Tantillo has sought employment in the healthcare industry in New York and has been unable to find any healthcare job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides a Covid-19 vaccine exemption for new hires who remain unvaccinated.

191. Edna Rodolfo (E. Rodolfo) is a female Christian who has worked for Defendant Staten Island University Hospital/Northwell Health (Northwell) for over 20 years as a Registered Nurse in the floating nurse pool providing bedside patient care.

192. Sometime around early September 2021, Northwell notified E. Rodolfo that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and as a mandated by Brookdale's employment policy (collectively the "Mandate").

193.    E. Ruldolfo submitted a written request to Defendant Northwell to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from and  to prevent her from experiencing a serious Covid-19 infection and her religious faith in God required her not to rely on the government pharmaceuticals for protection from the Covid-19 infection, which belief and practice required her to object to  submitting to the Covid-19 vaccine.

194.    Northwell denied E. Ruldolfo's request for an exemption from the Covid-19 vaccine mandate.

195.    Sometime around October 30, 2021, E. Rodolfo was terminated because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

196.    Before her termination, Defendant Northwell allowed E. Rodolfo to work following Defendants PPE and distancing protocols while unvaccinated.

197.    Northwell failed to provide E. Rodolfo a Powered Air Purifying Respirator (PAPR) mask so that she could continue to work unvaccinated.

198.    Northwell also failed to inform E. Rodolfo that she had the right pursuant to 29 U.S.C. §669 Sec. 20(a)(5) of the OSH Act to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

199.    Since her termination, E. Rodolfo has sought employment in the healthcare industry in New York and has been unable to find any healthcare job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides a Covid-19 vaccine exemption for new hires who remain unvaccinated.

200.    T. Beswick is a female African-American Bible Believer who has worked for Defendant Staten Island University Hospital/Northwell Health (Northwell/Staten Island) for over 17 years and 9 months as a Patient Care Assistant in the Ventilation Unit.

31

201.    Sometime around September 27, 2021, Northwell/Stanten Island notified T. Beswick that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and as a mandate based on Brookdale's employment policy of enforcing state public health laws. (collectively the "Mandate").

202.    T. Beswick submitted a written request to Defendant Northwell/Stanten Island to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from and to prevent her from experiencing a serious Covid-19 infection and her religious faith in God required her not to rely on the government pharmaceuticals for protection from the Covid-19 infection, which belief and practice required her to object to  submitting to the Covid-19 vaccine.

203.    Northwell/Stanten Island denied T. Beswick's request for an exemption from the Covid-19 vaccine mandate.

204.    Sometime around October, 2021 Northwell/Stanten Island terminated T. Beswich from her job because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

205.    Before her termination, Defendant Northwell allowed T. Beswick to work following Defendants PPE and distancing protocols while unvaccinated.

206.    Northwell/Stanten Island failed to provide T. Beswick a Powered Air Purifying Respirator (PAPR) mask so that she could continue to work unvaccinated.

207.    Northwell/Stanten Island also failed to inform T. Beswick that she had the right pursuant to 29 U.S.C. §669 Sec. 20(a)(5) of the OSH Act to object to the Covid-19 vaccine/immunization and medical treatment based on religious grounds.

208. Since her termination, T. Beswick has sought employment in the healthcare industry in New York and has been unable to find any healthcare job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides a Covid-19 vaccine exemption for new hires who remain unvaccinated.

**New York Presbyterian Hospital Employee(s)**

209. Tamara Anglin (T. Anglin) is a female, African-American Seventh-Day Adventist Christian believer who worked for Defendant New York Presbyterian Hospital (Presbyterian) for over eleven (11) years and served as Emergency Room Tech for two (2) years until she was terminated.

210. On or sometime after September 16, 2021, Presbyterian notified T. Anglin that she was required for workplace safety to submit to receiving the Covid-19 vaccine as a mandate from the New York State Department of Health pursuant to Public Health Law §16 and or §PHL 2.61 and/or as a mandate based on Presbyterian's employment policy (collectively the "Mandate").

211. Sometime around October 16, 2021, T. Anglin submitted written a request or an appeal to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from a Covid-19 infection and her religious faith in God required her not rely on the government pharmaceuticals to protect her from the Covid-19 disease, which belief and practice required her to object to taking the Covid-19 vaccine.

212. Specifically, T. Anglin bible belief and practices require her to use the Biblical herbal/plant medical practice to prevent the Covid-19 viral serious illness wherein she does not consume products that defile her body as found in the Bible at I Corinthians 3:16-17, Ex. 15:26, Ex. 16:15.

213.  Under information and belief, while waiting a decision regarding her request for exemption from the Covid-19 vaccine Mandate, T. Anglin was allowed to continue to work utilizing the OSHA safety requirements of "masking" and she agreed to submit to regular Covid-19 testing.

214.  Defendant Presbyterian refused to provide T. Anglin an exemption from the Covid-19 vaccine Mandate requirements despite having received her request.

215.  Defendant Presbyterian did not provide T. Anglin with an OSHA Powered Air Purifying Respirator (PAPR) mask so that he could remain on his job unvaccinated in order to provide him with an exemption from the Covid-19 vaccine Mandate.

216.  Defendant Presbyterian failed to inform T. Anglin that she had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow T. Anglin to remain on his job unvaccinated.

217.  On or around October 30, 2021, T. Anglin was terminated by Defendant Presbyterian because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

218.  Since her termination, T. Anglin has sought employment in the healthcare industry in New York State and has been unable to find any healthcare related job that does not require him to submit to the Covid-19 vaccine.

219.  Marie Pauline Salvia (M. Salvia) is female Bible Believer who worked for over 12 years as an employee of Defendant New York Presbyterian- Morgan Stanley Children's Hospital (Presbyterian) working as a neonatal ICU Registered Nursing in direct neonatal patient care.

220.  On or around January 11, 2022, M. Salvia was notified by Defendant Presbyterian that she was required for workplace safety to take the Covid-19 vaccine because the State of New York issued the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the

34

Covid-19 vaccine and based on Presbyterian's policy of enforcing the states PHL as an employment policy (collectively the "Mandate").

221.    Sometime after receiving notice, M. Salvia submitted a request to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from a Covid-19 infection and her religious practice required her to follow the Bible and not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required her to object to taking the Covid-19 vaccine.

222.    Defendant Presbyterian refused to provide M. Salvia an exemption from the Covid-19 vaccine Mandate.

223.    Defendant Presbyterian failed to provide M. Salvia with a Powered Air Purifying Respiratory so that she could continue to work unvaccinated in the Defendant Presbyterian workplace.

224.    Sometime in February/March, 2022, M. Salvia was terminated from her job at Defendant Presbyterian because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

225.    Defendant Presbyterian failed to inform M. Bish that she had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow M. Salvia to remain on her job unvaccinated.

## MONTEFIORE HEALTH SYSTEM & HOSPITAL EMPLOYEES

226.    Willis Harris (W. Harris) is a former employee of Defendant Montefiore Hospital who provided face to face patient care as a Licensed Practical Nurse for over five (5) years and he served in the health care field for over 15 years.

227.    W. Harris is an African-American male Seventh-Day Adventist Bible Believer who strictly follows the plant-based diet and strictly follows THE TEN LAWS of health prescribed in the Bible as his religious medical practice to address disease.

228.    On or around September 15, 2021, W. Harris was notified by Defendant Montefiore that he was required for workplace safety to take the Covid-19 vaccine by a certain deadline because the State of New York issued the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the Covid-19 vaccine and based on Montefiore's employment policy to enforce state public health laws. (collectively the "Mandate").

229.    On or around September 22, 2021, W. Harris submitted a request to be exempt from the Covid-19 vaccine Mandate and to remain unvaccinated while performing his job based on religious grounds wherein he explained, in summary, that his religious beliefs in the Bible required him to trust God to protect him from a Covid-19 infection and his religious practice required him to use Biblical plan herbal medicine to prevent suffering from a Covid-19 serious infection and required him not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required him to object to submitting to take the Covid-19 vaccine.

230.    W. Harris also provided a detailed pastoral letter supporting his beliefs and religious practices to obtain an exemption from the Covid-19 vaccine Mandate.

231.    Defendant Montefiore rejected W. Harris request for exemption from the Covid-19 vaccine Mandate based on his religious grounds and placed W. Harris on leave without pay on around October 1, 2021 stating that W. Harris request was "*not of a religious nature, you failed to demonstrate your request was based upon a sincerely held religious belief, practice and observance*" and Montefiore failed to provide any available safety measures so that he could remain in his job unvaccinated.

232.  Under information and belief, Montefiore, however, offered in an undated letter to allow W. Harris to reapply for the exemption and the accommodation by October 15, 2021 while on leave without pay but the offer required W. Harris to submit new information along with the prior submission, after which a response would be provided on or before October 15, 2021.

233.  At all relevant times herein, W. Harris was placed on leave without pay because he exercised his faith and remained unvaccinated based on his religious beliefs and practice of refusing to take the Covid-19 vaccine

234.  W. Harris was ultimately terminated on or around October 30, 2021 because he exercised his religious beliefs and practice to refuse to take the Covid-19 vaccine and decided to rely on his Biblical religious medical practice of following Biblical plant herbal medicine which includes eating a whole plant-based lifestyle medicine wherein he does not consume any animal products, nor consumes alcohol, nor smokes and he tries to consume mostly organic Non-GMO plants found in the Bible at Genesis 1:29, 30, 3:17-19, 9:4, Ex. 15:26, Ex. 16:15, Ps. 103:3, 104:14, Ps 78:18, Num 6:3, Num 35:33, 1 Cor 3:16-17, 3 John 1:2, Rev. 22:2, to name a few.

235.  Defendant Montefiore did not provide W. Harris with an OSHA Powered Air Purifying Respirator (PAPR) mask so that he could remain on his job unvaccinated in order to provide him with an exemption from the Covid-19 vaccine Mandate.

236.  Defendant Montefiore failed to inform W. Harris that he had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow W. Harris to remain on his job unvaccinated.

237.  Since his termination, W. Harris has sought employment in the healthcare industry in New York State and has been unable to find any healthcare related job that does not require him to submit to the Covid-19 vaccine.

238. Hedren Leckie (H. Leckie) was an employee of Defendant Montefiore Medical Center, operated by Montefiore Health System (Montefiore), working as a Service Desk Analyst in the IT Department responsible for handling high volumes of call with no direct patient care responsibilities.

239. H. Leckie's job could be performed 100% remote.

240. H. Leckie worked at Montefiore for over 2 years and is an African-American, male Bible believing Christian who has worked in the healthcare industry approximate 10 years.

241. On or around September 7, 2021, H. Leckie was notified by Defendant Montefiore's that he was required for workplace safety to take the Covid-19 vaccine as mandate by the New York's PHL §2.61 and/or as a mandated based on Montefiore's employment policies (collectively the "Mandate") requiring him as an employee to be fully vaccinated against Covid-19 by September 27, 2021.

242. Sometime before October 8, 2021, H. Leckie submitted a requests to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing his job based on religious grounds wherein he explained, in summary, that his religious beliefs in the Bible required him to trust God to protect him from a Covid-19 infection and his religious practice required him to use Biblical plan herbal medicine as outlined in to prevent suffering from a Covid-19 serious infection and his faith religious belief required that he not rely on the government pharmaceuticals to prevent the Covid-19 disease, which belief and practice required him to object to taking the Covid-19 vaccine.

243. H. Leckie was placed on leave without pay on October 1, 2021 because he remained unvaccinated and was informed that he would be terminated on October 30, 2021 if he would not get vaccinated.

244.    On or around October 30, 2021, H. Leckie was terminated because he exercised his religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

245.    Defendant Montefiore did not provide H. Leckie with an OSHA Powered Air Purifying Respirator (PAPR) mask so that he could remain on his job unvaccinated in order to provide him with an exemption from the Covid-19 vaccine Mandate.

246.    Defendant Montefiore failed to inform H. Leckie that he had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow H. Leckie to remain on his job unvaccinated.

247.    Since his termination, H. Leckie has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

248.     Marie Bish (M. Bish) is an African in America female Bible Believer who worked for 3 years a an employee of Defendant Montefiore Burke Rehabilitation Hospital (Burke Montefiore) working as a Nursing Assistant in direct patient care.

249.    On or around September, 2021, M. Bish was notified by Defendant Burk Montefiore that she had to take the Covid-19 vaccine sometime before November, 2021 because the State of New York issued  the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the Covid-19 vaccine and based on Burke Montefiore's policy of enforcing the states PHL as employment policy (collectively the "Mandate").

250.    Sometime after receiving notice, M. Bish submitted a request to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from a Covid-19 infection and her religious practice required her to

follow the Bible and not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required her to object to taking the Covid-19 vaccine.

251. Defendant Burk Montefiore refused to provide M. Bish an exemption from the Covid-19 vaccine Mandate.

252. Defendant Burk Montefiore failed to provide M. Bish with a Powered Air Purifying Respiratory so that she could continue to work unvaccinated in the Defendant Burk Montefiore workplace.

253. Sometime in December, 2021, M. Bish was terminated from her job at Defendant Burk Montefiore because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

254. Defendant Burk Montefiore failed to inform M. Bish that she had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow M. Bish to remain on his job unvaccinated.

255. Since the termination, M. Bish has sought employment in the healthcare industry in New York and had a hard time finding a job and had to search for a job outside the state in New Jersey.

## BROOKHAVEN REHABILITATION & HEALTH CARE EMPLOYEE

256. Nichole Hudson-Jack (N. Jack) is an African-American, female Bible Believer who worked for 9 years an employee of Defendant Brookhaven Rehabilitation & Health Care Center (Brookhaven) working as an Occupational Therapy Assistant responsible for assisting with direct occupational patient care.

257. On or around November 4, 2021, N. Jack was notified by Defendant Brookhaven that she had to take the Covid-19 vaccine by November 11, 2021 because the State of New York issued the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the Covid-19

vaccine and based on Brookhaven's employment policy to enforce state public health laws. (collectively the "Mandate").

258. Sometime after receiving notice, N. Jack submitted a request to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing his job based on religious grounds wherein he explained, in summary, that his religious beliefs in the Bible required him to trust God to protect him from a Covid-19 infection and his religious practice required him to use Biblical plan herbal medicine to prevent suffering from a Covid-19 serious infection and required him not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required him to object to submitting to take the Covid-19 vaccine.

259. Defendant Brookhaven refused to provide N. Jack an exemption from the Covid-19 vaccine Mandate.

260. Defendant Brookhaven failed to provide N. Jack with a Powered Air Purifying Respiratory so that she could continue to work unvaccinated in the Defendant Brookhaven's workplace.

261. N. Jack was placed on leave without pay on November 12, 2021 because she remained unvaccinated due to her religious practice and she was informed that she would be terminated on December 12, 2021 if she would not get vaccinated.

262. On December 12, 2021, N. Jack was terminated from her job at Defendant Brookhaven because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

263. Defendant Brookhaven failed to inform N. Jack that she had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow N. Jack to remain on his job unvaccinated.

264. Since the termination, N. Jack has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19

vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

265.    Defendant Brookhaven failed to provide N. Jack to allow remote work, and failed to provide her with a Powered Air Purifying Respirator (PAPR) mask so that she could continue to work her job unvaccinated.

## MT. SINIA HEALTHCARE SYSTEM EMPLOYEES

266.    Jean Baptiste (J. Baptiste) is an African-American male Seventh-Day Adventist Bible Believer who worked 13 years for Defendant Mt. Sinai Hospital Health System, Mt. Sinai West Hospital located, 1111 Amsterdam Ave., New York, New York 10025 (Mt. Sinai) as a Registered Critical Care Nurse with face to face patient care.

267.    During the 13 years J. Baptiste worked at Mt. Sinai, he always received a work schedule adjustment of a reasonable accommodation for his religious practice of not working on seventh-day of the week called Shabbat.

268.    On or around October 18, 2021, J. Baptiste was notified by Defendant Mt. Sinia that he had to take the Covid-19 vaccine because the State of New York issued  the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the Covid-19 vaccine and based on Brookhaven's employment policy to enforce state public health laws. (collectively the "Mandate").

269.    Sometime after receiving notice, J. Baptiste submitted a request to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing his job based on religious grounds wherein he explained, in summary, that his religious beliefs in the Bible required him to trust God to protect him from a Covid-19 infection and his religious practice required him to use Biblical plan herbal medicine to prevent suffering from a Covid-19 serious infection and

required him not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required him to object to submitting to take the Covid-19 vaccine.

270. Defendant Mt. Sinai refused to provide J. Baptiste an exemption from the Covid-19 vaccine Mandate.

271. Defendant Mt. Sinai failed to provide J. Baptiste with a Powered Air Purifying Respiratory so that she could continue to work unvaccinated in the Defendant Mt Sinia's workplace.

272. J. Baptiste was placed on leave without pay on November 28, 2021 because he remained unvaccinated due to his religious practice and he was informed that he would be terminated on December 12, 2021 if she would not get vaccinated.

273. On or around December 3, 2021, J. Baptiste was terminated from his job at Defendant Mt. Sinai because he exercised his religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

274. Defendant Mt. Sinai failed to inform J. Baptiste that he had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow J. Baptiste to remain on his job unvaccinated.

275. Since that the termination, J. Baptiste has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

276. Nora Sammon, N. Sammon (N. Sammon) is female Bible believer Christian who worked for 5 years as an employee of Defendant Mt. Sinai working as a Clinical Nurse Manager responsible for managing a specialty department of ten nurses who managed patients with complex wounds and ostomies and coordinated with other nurse manages to reduce Hospital Acquired Pressure Injuries and developed nurse education programs.

277.  On or around September 18, 2021, N. Sammon was notified by Defendant Mt. Sinai that she was required for workplace safety to take the Covid-19 vaccine because the State of New York issued the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the Covid-19 vaccine and mandated by Brookhaven's employment policy to enforce state public health laws. (collectively the "Mandate").

278.  Sometime after receiving notice, N. Sammon submitted a request to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from a Covid-19 infection and her religious practice required her to not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required her to object to submitting to take the Covid-19 vaccine.

279.  Defendant Mt. Sinai refused to provide N. Sammon an exemption from the Covid-19 vaccine Mandate.

280.  Defendant Mt. Sinai failed to provide N. Sammon with a Powered Air Purifying Respiratory so that she could continue to work unvaccinated in the Defendant Mt. Sinia's workplace.

281.  N. Sammon was placed on leave without pay on December 14, 2021 because she remained unvaccinated due to her religious practice and she was informed that she would be terminated on December 12, 2021, if she would not get vaccinated.

282.  On February 2, 2020, N. Sammon was notified that she was terminated from her job at Defendant Mt. Sinai because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

283.  Defendant Mt. Sinai failed to inform N. Jack that she had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow N. Sammon to remain on her job unvaccinated.

44

284.  Since the termination, N. Sammon has sought employment in the healthcare industry in New York and has been unable to find any job that does not require new hires to submit to the Covid-19 vaccine and nor has she found a job that states that it provides accommodations for new hires who remain unvaccinated.

285.  Defendant Mt. Sinai failed to provide N. Sammon to provide her with a Powered Air Purifying Respirator (PAPR) mask so that she could continue to work her job unvaccinated.


## PRIDE GLOBAL/PRIDE HEALTHCARE EMPLOYEE

286.  Cheryl Thompson (C. Thompson) is a female Bible Believer Christian who worked for 3 years an employee of Defendant Pride Global and Pride Health Care (Pride) working with direct occupational patient care for individuals with intellectual disabilities.

287.  On or around August 24, 2021, C. Thompson was notified by Defendant Pride that she was required for workplace safety to take the Covid-19 vaccine by November 11, 2021 because the State of New York issued  the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the Covid-19 vaccine and based on Pride's employment policy to enforce state public health laws. (collectively the "Mandate").

288.  Sometime after receiving notice, C. Thompson submitted a request to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from a Covid-19 infection and her religious practice required her to follow the Biblical and not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required her to object to submitting to taking the Covid-19 vaccine.

289. Defendant Pride refused to provide C. Thompson an exemption from the Covid-19 vaccine mandate.

290. Defendant Pride failed to provide C. Thompson with a Powered Air Purifying Respiratory so that she could continue to work unvaccinated in the Defendant Pride's workplace.

291. On January 25, 2022, C. Thompson was terminated from her job at Defendant Pride because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

292. Defendant Pride failed to inform C. Thompson that she had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow C. Thompson to remain on her job unvaccinated.

293. Since that the termination, C. Thompson has sought employment in the healthcare industry in New York and has been unable to find any job equivalent that does not require new hires to submit to the Covid-19 vaccine.

## NYU LANGONE HEALTH EMPLOYEE

294. Marie Jo Barrie (MJ Barrie) is a female Bible Believer Christian who worked for 18 years as an employee of Defendant NYU Langone Health (Langone) working an Office Assistant in medical records administration.

295. On or around November 15, 2021, MJ Barrie was notified by Defendant Langone that she was required for workplace safety to take the Covid-19 vaccine by November 16, 2021 because the State of New York issued  the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the Covid-19 vaccine and based on Langone's employment policy of enforcing state public health laws and Langone's policy position that "vaccination is the best way to protect patients."  (collectively the "Mandate").

296. Sometime after receiving notice, MJ Barrie submitted a request to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from a Covid-19 infection and her religious practice required her to follow the Biblical and not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required her to object to submitting to taking the Covid-19 vaccine.

297. Defendant Langone refused to provide MJ Barrie an exemption from the Covid-19 vaccine mandate claiming that religious exemptions are not to be accepted due to decisions made in court.

298. Defendant Langone failed to provide MJ Barrie with a Powered Air Purifying Respiratory so that she could continue to work unvaccinated in the Defendant Langone's workplace.

299. On November 17, 2021, MJ Barrie was placed on leave without pay until November 24, 2021, which was extended to November 29, 2021 to give MJ Barrie additional time comply with the Mandate

300. On November 29, 2021, MJ Barrie was terminated from her job at Defendant Langone because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

301. Defendant Langone failed to inform MJ Barrie that she had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow MJ Barrie to remain on her job unvaccinated.

302. Since that the termination, MJ Barrie has sought employment in the healthcare industry in New York, which has been very difficult to obtain an job equivalent that does not require new hires to submit to the Covid-19 vaccine.

## ST. JOHN'S EPISCOPAL HOSPITAL

303.    Karen James (K. James) is a female Bible Believer Christian who worked a little over for 2 years as an employee of Defendant St. John's Episcopal Hospital (St. John) working population health as an Emergency Department Navigator with direct occupational patient care.

304.    On or around August 20, 2021, K. James was notified by Defendant St. John that she was required for workplace safety to take the Covid-19 vaccine by September 17, 2021 because the State of New York issued  the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the Covid-19 vaccine and based on Pride's employment policy to enforce state public health laws. (collectively the "Mandate").

305.    Sometime after receiving notice, K. James submitted a request to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in the Bible required her to trust God to protect her from a Covid-19 infection and her religious practice required her to follow the Biblical and not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required her to object to submitting to taking the Covid-19 vaccine.

306.    On November 2, 2021, Defendant St. John refused to provide K. James with an exemption from the Covid-19 vaccine mandate.

307.    Defendant St. John failed to provide K. James with a Powered Air Purifying Respiratory so that she could continue to work unvaccinated in the Defendant John's workplace.

308.    K. James complied with all Defendant St. John's testing and other PPE mandates and requirements while working.

309.    On January 5, 2022, K. James was terminated from her job at Defendant St. John because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

310.    Defendant St. John failed to inform K. James that she had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow K. James to remain on her job unvaccinated.

311.    Since that the termination, K. James has sought employment in the healthcare industry in New York and has been unable to find any job equivalent that does not require new hires to submit to the Covid-19 vaccine.

## VISITING NURSE SERVICES IN WESTCHESTER, INC.  (VNSW) EMPLOYEE

312.    Kimberly M. Greenberg (K. Greenberg) is a female whose religious beliefs are rooted in  Biblical principles and who worked a little over for 8 years as an employee of Defendant Visiting Nurse Service In Westchester, Inc. (VNSW) and for purposes of this Complaint was working as a Nurse Auditor in the QI Department  responsible for auditing homecare assessment documents, charting for accuracy, compliance and communication with staff for charting corrections, without daily direct patient care.

313.    On or around September 2, 2021, K. Greenberg was notified by Defendant VNSW that she was required for workplace safety to take the Covid-19 vaccine by October 7, 2021 because the State of New York issued  the New York Public Health Law (PHL) §2.61 that mandated all healthcare workers to take the Covid-19 vaccine and VNWS employment policy that enforced the NY  PHL (collectively the "Mandate").

314.    Sometime after receiving notice October 4, 2021, K. Greenberg submitted a request to be exempted from the Covid-19 vaccine Mandate and to remain unvaccinated while performing her job based on religious grounds wherein she explained, in summary, that her religious beliefs in

the Bible required her not to take vaccines because of their content and that it is a sin to take vaccines and that she must turn to God and trust God and not to rely on the government pharmaceuticals to prevent the Covid-19 infection, which belief and practice required her to object to submitting to taking the Covid-19 vaccine.

315. On October 13, 2021, Defendant VNWS refused to provide K. James with an exemption from the Covid-19 vaccine mandate and K. Greenberg appealed by making another request.

316. Defendant VNWS failed to provide K. Greenberg with a Powered Air Purifying Respiratory so that she could continue to work unvaccinated in the Defendant VNWS's workplace.

317. K. Greenberg complied with all Defendant VNWS's testing and other PPE mandates and requirements while working.

318. Sometime at the end of October, K. Greenberg was placed on leave without pay and subsequently terminated from her job at Defendant VNWS because she exercised her religious beliefs and practice of refusing to take the Covid-19 vaccine as described above.

319. Defendant VNWS failed to inform K. Greenberg that she had the right to object to taking the Covid-19 vaccine pursuant 29 U.S.C.§669 Sec. 20(a)(5) that would allow K. James to remain on her job unvaccinated.

320. All of the above Plaintiffs were employees as defined in the OSH Act pursuant to 29 USC 652 Sect 3(5) which defines employee as "means an employee of an employer who is employed in a business of his employer which affects commerce."

B. **DEFENDANTS**

321. Brookdale University Hospital and Medical Center ("Brookdale") is a not-for- profit corporation organized and existing under the laws of the State of New York having its principal place of business at Brookdale Plaza, Brooklyn, New York and is part of the One Brooklyn Health System.

322. One Brooklyn Health System, was and still is a domestic not-for-profit corporation duly authorized to own property and conduct business in the State of New York and with premises located at 68th Street and York Avenue, in the Borough of Manhattan City, New York.

323. The Brooklyn Hospital Center (TBHC), was and still is a corporation duly organized and existing under and by virtue of the laws of the State of New York operating a hospital facility located at 121 Dekalb Avenue, Brooklyn, New York 11201.

324. Montefiore Health System (Montefiore), was and still is domestic non-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York and is the owner and operates the medical facility called Montefiore Medical Center located at 111 East 233 Street, County of the Bronx, City and State of New York.

325. Mount Sinai Health System, Inc. (Mt. Sinai) was and still is a domestic non-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York, with a principal place of business One Gustave, Levy Place, New York, New York, 10029.

326. Staten Island University Hospital Northwell (Staten Island), at all times hereinafter mentioned, was and still is a domestic limited liability company, duly organized and existing under and by virtue of the laws of the State of New York operating a facility with healthcare employees at 475 Seaview Ave. Staten Island, New York 10304.

327. New York Presbyterian Hospital (Presbyterian), at all times hereinafter mentioned, was and still is a domestic non-for-profit corporation duly organized and existing under and by virtue of the laws of the State of New York operating a facility with healthcare employees at 161 Fort Washington Ave New York, New York 10032 that is part of the New York Presbyterian Healthcare System, Inc.

328. New York Presbyterian Healthcare System, Inc., at all times hereinafter mentioned, was and still is a domestic non-for-profit corporation duly organized and existing under and by virtue of the

laws of the State of New York operating a facility with healthcare employees at 161 Fort Washington Ave New York, New York 10032.

329. New York City Health & Hospitals/Bellevue (Bellevue) was and still is a domestic not-for-profit hospital organized and existing under the virtues of the State of New York with its principal place of business situated in the County of New York and the State of New York operating through the New York City Heath and Hospitals Corporation with a medical facility located at 462 1st Avenue New York, New York 10016 that is part of the New York City Health and Hospitals Corporation.

330. New York City Health & Hospitals Corporation (NYCHH) (Woodull) was and still is a municipal corporation organized and existing under the virtues and laws of the State of New York, with its principal place of business situated in the County of New York and the State of New York and operating medical facilities located at 462 1st Avenue, New York, New York 10016.

331. Staten Island University Hospitals/Northwell Health (Staten Island) was and still is a municipal corporation organized and existing under the virtues and laws of the State of New York, with its principal place of business situated in the County of New York and the State of New York and operating medical facilities located at 475 Seaview Avenue, Staten Island, New York 10305.

332. Brookhaven Rehabilitation and Health Care Center was and still is a domestic not-for-profit hospital organized and existing under the virtues of the State of New York operating a healthcare facility at the location of 250 Beach 17th Street, Far Rockaway, New York 11691.

333. St. Johns Episcopal Hospital was and still is a domestic non-for-profit hospital organized and existing under the virtues of the State of New York operating a healthcare facility at 327 Beach 19th Street, Rockaway, New York 11691

334. Pride Healthcare, LLC and Pride Healthcare Staffing, Inc. are foreign limited liability companies doing business as a hospital operating under the virtues of the State of New York at 420 Lexington Ave., 30th Floor, New York, NY 10170.

335. New York University Langone Hospitals is a domestic not-for-profit hospital organized and existing under the virtue of the State of New York at 550 First Avenue, NY

336. VNSW Community Care Navigation, Inc. (also known as Visiting Nurses Service of Westchester) is a domestic health care facility operating under the virtues of the State of New York at 1311 Mamaroneck Ave, White Plains, New York 10605.

337. Defendant referenced hereafter refers to each Defendant individually only as related to the specific Plaintiffs or Plaintiffs that were a former employee of Defendant and Defendants referenced hereafter refers to all Defendants in the collective unrelated to a specific Plaintiff employee.

338. **FACTUAL BACKGROUND**

**A. Procedural Facts Applicable To All Plaintiff Claims**

339. In 1970, Congress (through its Constitutional power under Article 1, Section 8 of the Commerce Clause) enacted the Occupational Safety and Health Act (OSH Act) described in the "All About OSHA" publication by the Occupational Safety and Health Administration as a law that "makes it clear that the right to a safe workplace is a "basic human right" and that employers are strictly liable under the OSH Act for providing a safe and healthful workplace. See Exhibit 1 – All About OSHA – incorporated herein as if fully stated herein

340. The OSH Act created the federal Occupation Safety and Health Administration (OSHA) and provided exclusive authority to OSHA's Secretary through 29 U.S.C. §655 Section 6(b)(6)(iii) to promulgate "minimum" health and safety standards and to determine the "practices, means,

methods, operations, and processes" that certain public and private employers who are regulated by the OSH Act must comply with to provide employees with a safe workplace.

341. Congress reserved to the OSHA Secretary the exclusive power to set "a nationwide floor of minimally necessary safeguards" defined in the OSH Act as occupational safety and health standards that regulated entities defined in the OHA Act, which include certain public employers and certain private employers and places of public accommodation are mandated to meet to provide safe workplaces for employees and safe public places for the general public. 29 U.S.C. § 651(b) See *Solus Indus. Innovations, LLC v. Superior Court of Orange Cnty.*, 228 Cal. Rptr. 3d 406 (Cal. 2018).

342. The OSH Act defines an occupational safety and health standard as one that "requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." (hereinafter "OSHA Standards") See collectively 29 U.S.C. §652 Section 3(8) (Emphasis added).  See Exhibit 2 – The OSHA Act

343. The OSH Act was enacted "to address the problem of uneven and inadequate state protection of employee health and safety" and to "establish a nationwide 'floor' of minimally necessary safeguards" called OSHA standards and regulations. See *United Air Lines, Inc. v. Occupational Safety & Health Appeals Bd.*, 32 Cal.3d 762, 772, 654 P.2d 157 (1982)

344. According to 29 U.S.C. §655 Sec. 6(a), the Secretary shall:

> "promulgate the standard which assures the greatest protection of the safety or health of the affected employees."

345. The OSH Act places a duty on all regulated entities (defined in the OSH Act) that is contained in the General Duty Clause at 29 USC 654 Sec 5(a)(1), which mandates that all regulated entities

shall provide a workplace that is free from recognized hazards that are causing or are likely to cause death or serious physical harm to employees.

346.  The OSHA Standards, which includes regulations, orders and guides promulgated by the OSHA Secretary, instruct employers on how to meet their duty under the General Duty Clause when there is a recognized hazard in the workplace.

347.  The City of New York as a public employer is a regulated municipal entity that must comply with the OSH Act minimum safety standards and regulations pursuant to the OSH Act 29 USC 667, Section 18 through the New York OSHA State Plan. See Exhibit 3 -The NY State OSHA Plan – incorporate herein as if stated in full

348.  Defendants, as "employers" are entities that have employees and engage in business affecting commerce who must also comply with the OSH Act General Duty Clause as well as standards and regulations pursuant to the OSH Act at 29 U.S.C. §652 Section 3 and U.S.C. §654 Section

349.  The basic safety principle of the OSHA General Duty Clause is to place on regulated entities (hereinafter "employers") the duty to remove "hazards" from the workplace and not "employees" so that employees can remain working in their workplace free from hazards that can cause serious physical harm or death. See Exhibit 4 – OSHA Hygienist Expert Affidavit of Bruce Miller – incorporated herein as if stated in full

350.  Employers are mandated by the OSHA Act standards to only use safety "methods" that are approved by the OSHA Secretary in the OSHA standards and regulations.

351.  Each employee of a regulated employer also have duties according to 29 U.S.C. §654 Sec. 5(b) of the OSH Act, which state and include as follows:

> "Each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct."

352.  Employees are not mandated to comply with occupational safety and health standards or rules or regulations and orders that do not meet the minimum standards, rules, regulations or orders approved by the OSHA Secretary.

353.  According to the OSHA Training Requirements in OSHA Standards manual attached hereinto and incorporated as <u>Exhibit 5</u>, employers have a duty and responsibility pay for the training employees and to inform employees of their OSH Act rights and responsibilities to "comply" with OSHA's standards, rules, regulations or orders.

354.  To protect employees and the general public that are present in workplaces from serious injury or death that could be caused by recognized airborne hazards in the workplace, including airborne infectious communicable diseases like Covid-19,  OSHA approved specific safety standards, and regulations referred to generally as the Respiratory Standards, that include OSHA's Personal Protective Equipment standard at 29 CFR §1910.132, and the Respiratory Protection standard at 29 CFR §1910.134 (Collectively Respiratory Standards);  incorporated herein as if stated in full

355.  In 1979, OSHA added to the Respiratory Standards, another safety method that employers can use to meet their obligations under the General Duty clause when airborne hazards are recognized in the workplace called the In- door Ventilation and In-door Air Quality regulations under 29 C.F.R. Section 1926.57 which generally outlines authorized safety methods that can be used by employers to remove airborne hazards from the workplace atmosphere. (Ventilation, In-door Air Quality collectively with the Respiratory Standards shall hereafter be referred to collectively as the "Respiratory Safety Method Standards")

356.  These approved Respiratory Safety Method Standards have not changed despite the number of global pandemics involving hazardous respiratory agents, including the 2009 H1N1 Global Pandemic.

357.    On March 11, 2020, the World Health Organization declared the airborne virus SarsCov2 that causes the infectious illness called Covid-19, a Global Pandemic that can cause serious physical harm or injury and death (herein after the "Covid-19").

358.    According to the Center for Disease Control, the principal mode by which people are infected with the airborne Covid-19 virus is through exposure to airborne respiratory fluids carrying the infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, (2) deposition of airborne respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them.  See Exhibit 6 – CDC Covid-19 Transmission article incorporated herein as if fully stated

359.    According to the affidavit of world renown medical physician, scientific researcher and Public Health PhD Dr. Peter McCullough attached hereto as Exhibit 7 and incorporated herein, the airborne virus that causes the Covid-19 infection that is recognized in the workplace is a workplace illness covered by the OSH Act because the Covid-19 airborne virus can be transmitted into the workplace atmosphere by employees infected with the Covid-19 virus when the infected employee talks to co-workers or the general public as part of the employees daily job responsibilities and the employee  while talking and coughing or sneezing while talking in the workplace atmosphere emits the Covid-19 airborne hazard vapors, droplets or fluids into the atmosphere from the infected person and another employee or someone from the public inhales the airborne Covid-19 virus into their mouth or nose and through that exposure and inhalation of the airborne Covid-19 virus an infection can result in another employee or public person in the workplace.

360.   According to the affidavit of OSHA Hygienist expert Bruce Miller attached hereto as <u>Exhibit 4</u> and incorporated herein, employers subject to the OSH Act have a duty to based on the OSHA General Duty Clause and the Respiratory Safety Method standards remove any recognized airborne hazards emitted into the workplace by employees or the public and they have a duty to prevent employee exposure to any recognized airborne hazards in the workplace, which includes airborne infectious diseases recognized in the atmosphere of the workplace, including but not limited to the airborne infectious diseases of SARS, MRSA, Zika, Pandemic Influenza, Measles, Ebola and the airborne Covid-19 virus.

361.   Federal courts have held that pursuant to the OSHA Respiratory regulations at CFR 1910.132 and the OSHA General Duty Clause, the City and all employers have a non-delegable duty to take "immediate action to eliminate employee exposure to an imminent danger identified" in the workplace atmosphere, when dealing with airborne contaminants. See *Doca v. Marina Mercante Nicaraguense, S.A.*, 634 F.2d 30, 33 (2d Cir. 1980) (held that OSHA regulatory standards created a non-delegable duty to remove a known hazard.)

362.   The primary objective of the OSHA Respiratory Safety Method Standards is to instruct employers as their statutory duty to implement <u>methods</u> that, at minimum, either: 1) remove recognized hazardous airborne contaminations from the atmosphere of a workplace and/or 2.) prevent employee exposure to known airborne contaminates in the workplace atmosphere. See <u>Exhibit 4</u>, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51

363.   The OSHA Respiratory Safety Method Standards also mandate employers to provide "remote work from home" as an additional safety <u>method</u> that an employer can use when an employer cannot remove an airborne hazard from the workplace atmosphere or provide equipment that can shield an employee from exposure to an airborne hazard. See <u>Exhibit 4</u>, P. 6, ¶ 20, P.9,¶34, P. 16, ¶ 51 -OSHA Expert Affidavit

364.    For over two decades, OSHA has had "remote work" regulations, and "remote work" is an approved method for preventing employee exposure to workplace airborne hazards.  See <u>Exhibit 4</u>

365.    On June 21, 2021, OSHA reported in a published Emergency Temporary Standard (ETS) that the airborne virus that causes the Covid-19 disease is an airborne hazard that can cause serious physical injury and/or death, but that the Covid-19 vaccines have not "eliminated the grave danger presented by the SARS-CoV-2 virus" that causes the Covid-19 disease. See <u>Exhibit 8</u> -

366.    The June 21, 2021 OSHA ETS only "encourages" vaccination but does not mandate vaccination for which an employer can be "cited" as having violated the OSHA regulations or standards in general.[3]

367.    The OSHA Department of Labor Solicitor stated in their Response to the Emergency Petition brought by various private sector employers that the OSH Act standards and regulations for preventing exposure to any hazardous virus that causes serious physical injury and/or death are sufficient to deal with new Covid-19 airborne hazard and, in summary, that OSHA would not promulgate a new standard that would allow any Covid-19 vaccine to serve as a new method that employers can use to meet their duty to remove the Covid-19 airborne hazard from the workplace or to prevent employee exposure to the Covid-19 airborne hazard under the General Duty Clause.  See <u>Exhibit 9</u> – Labor Depart Petition – attached and incorporated as if fully stated herein

368.    All employers, including Defendants, are mandated to comply with the OSHA minimum Respiratory standards by using only the authorized <u>methods</u> approved by OSHA to keep

---

[3] The November 2021 OSHA ETS was withdrawn because to the U.S. Supreme Court's struck down the ETS as unauthorized and exceeding the OSHA Secretaries congressional powers contained in the OSH Act.

employees safe during an outbreak of any recognized airborne virus in the workplace, including the airborne virus that causes a Covid-19 infection in the workplace.

369.   According to the expert affidavit of Dr. Baxter Montgomery, MD a cardiologist responsible for OSHA workplace safety in his medical facility attached hereto as <u>Exhibit 10</u> and incorporated herein as if fully stated, vaccines/immunizations are "medical treatments" that affects the human immune system and are incapable of eliminating any airborne infectious diseases from the workplace atmosphere or shielding employees from exposure to any recognized airborne infectious disease, like Covid-19, that can cause serious injury or death as required to be an OSHA approved safety minimum safety method that protects employees in the workplace.

370.   Also, according to Dr. Montgomery and three medical research studies, Plant-Based Lifestyle Medicine or the use of plant foods, herbs in conjunction with healthful lifestyle interventions can also be used, like vaccines, to improve the immune response and reduce severe injury and death if a person or employee is exposed to and infected by the virus that causes Covid-19. Id.

371.   While all vaccines obtain federal approval for use from the Food & Drug Administration (FDA), the Federal Food, Drug, and Cosmetic Act ("FDCA") 21 U.S.C. § 301 et seq., only grants the FDA authority to regulate all "drugs" and "devices," which include any "articles (other than food) intended to affect the structure or any function of the body," as well as any components of such articles. Id. § 321(g)(1)(C)- (D), (h)(3) (Emphasis added).

372.   The FDA regulates medical treatments or products that are ingested inside a human person that every competent person has the fundamental right to refuse. See *Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 262 (1990)

373.   The FDA does not have authority to regulate methods to be used to provide environmental health and safety in physical places of business and workplaces for which OSHA has exclusive authority.

374. The Center for Disease Control (CDC) declaration that the Covid-19 vaccines are "safe and effective" does not make the Covid-19 vaccine an OSHA approved "safety method" that employers can use to prevent employee and the public's exposure to the recognized airborne communicable disease called Covid-19.

375. The OSH Act does not authorize the OSHA Secretary nor employers regulated by the OSH Act and regulations to prescribe FDA "medical treatments" to eliminate recognized airborne workplace hazards like Covid-19 that can cause serious injury or death.

376. It is a felony in New York for any unauthorized person to prescribe or mandate a "medical treatment," including the medical treatment of the Covid-19 vaccine. See New York Education Law §6520& §6521 and §6512.

377. Vaccines/immunizations are not OSHA authorized or approved workplace safety methods that any employer is permitted to use to comply with the OSHA General Duty Clause when airborne hazards are recognized in the workplace.

378. If an employer desires to use a new and unapproved safety method to prevent employee exposure to any airborne hazard recognized in the workplace, the employer has to seek a variance pursuant to 29 U.S.C. .§655 Sec. 6(d) and demonstrate by the preponderance of the evidence that the new safety method will provide employment and places of employment to employees which are as safe and healthful as those which would prevail if the employer complied with the applicable standard.

379. Neither the City nor Defendants applied for a variance from OSHA to mandate the Covid-19 vaccine as a new method to prevent employee exposure to the recognized Covid-19 airborne hazard in Plaintiffs workplace.

380.    All employers are required to pay for any and all OSHA approved Respiratory standard safety equipment and pay for all required workplace administrative modifications required to provide a safe workplace for employees under OSHA regardless of the cost.

381.    Pursuant to 29 U.S.C. §669 Sec. 20(a)(1) of the OSH Act, the Secretary of the U.S. Health & Human Services (HHS) in consultation with the OSHA Secretary can conduct - directly or by grants or contracts - research, "experiments," demonstrations relating to approaches for dealing with occupational health problems that are not already approved OSHA safety methods or approaches.

382.    While the Secretary of HHS can grant funding and contracts to provide experimental approaches to employers to deal with occupation health problems like the health problems caused by the airborne Covid-19 viral hazard, the OSH Act in 29 U.S.C. §669 Sec. 20(a)(5) gives employees the right to object to participation in the use of "experimental" approaches authorized by HHS and mandated employers as a workplace safety method, which Sec. 20(a)(5) states as follows:

> "Nothing in this or any other provision of this Act shall be deemed to authorize or require medical examination, immunization, or treatment for those who object thereto on religious grounds, except where such is necessary for the protection of the health or safety of others."

383.    29 USC §669 Section 20(a)(5) of the OSH Act is not a regulatory provision or standard created by the OSHA Secretary, it is a statutory provision.

384.    29 USC §660 Sec. 11(c)(1) of the OSH Act bans employer discharge or discrimination against employees who exercise their right to object to any vaccination, medical treatment or exam pursuant Sect 20(a)(5), which ban is stated as follows:

> "No person shall discharge or in any manner discriminate against any employee because ……….of the exercise by such employee ……..of any right afforded by this Act."

385. 29 USC §669 Section 20(a)(5) of the OSHA Act does not require an employee to explain in writing their religious beliefs to an employer before their right to object to a mandated immunization/vaccine or medical treatment is protected from wrongful discharge or employer discrimination under Section 11(c)(1).

386. 29 USC §660 Section 11(c)(2) does not require or mandate an employee who is wrongly discharged by an employer for objecting to a mandated vaccine/immunization or medical treatment on religious grounds to file a complaint with the Secretary of OSHA before the employee is permitted to bring an action in United States District courts.

387. The OSHA Secretary does not have authority to amend, modify or repeal 29 USC §669 Section 20 of the OSH Act and neither does the OSHA Secretary have authority to investigate, report, fine or sue employers for violations of 29 USC §660 Section 11(c)(1) and based on an employee's exercise of their right to object to Medical Treatment contained in 29 USC §669 Section 20(a)(5).

388. All employers, including Defendants, must comply with 29 U.S.C. §669 Section 20(a)(5) of the OSHA Act which bans employers from terminating employees who object to taking a HHS experimental medical examinations, immunizations/vaccines, or treatments that have been funded by HHS research or innovative methods investments pursuant to 29 U.S.C. §669(a)(1) when the employee objects on religious grounds.

389. The Covid 19 vaccine is a medical treatment or immunization/vaccine that was funded by HHS through the Rapid Response Partnership Vehicle (RRPV) Consortium designed to support advanced research and development of medical countermeasures, such as vaccines, therapeutics and diagnostics.

390. In 2009, the World Health Organization declared H1N1 a "global pandemic" and OSHA did not add vaccines to the list of approved safety methods to manage the H1N1 airborne global

pandemic hazard in the workplace.  See <u>Exhibit 11</u> – WHO Declares H1N1 global pandemic – attached herein  and incorporate herein as if fully stated

391.  On or around December 11, 2020, HHS through its FDA agency provided Emergency Use Authorization (EUA) for Pfizer-BioNTech, Moderna, and Janssen Covid-19 vaccines (collectively the "Vaccines") as experimental medical treatments for the virus that causes the Covid-19 infection in humans, including infections of employees in workplaces or places of public accommodations. See <u>Exhibit 12</u>

392.  The HHS/FDA EUA approval of the experimental Covid-19 vaccine is part of the many "activities" authorized for the Secretary of HHS to conduct research, experiments or demonstrations of unapproved methods, techniques and approaches for dealing with occupational safety and health problems pursuant to the OSH Act in 29 U.S.C. §669 Sec. 20(a)(1).

393.  When Congress enacted the 1972 Communicable Disease Control Program (CDCP) it only authorized the Secretary of HHS to make any vaccines, in general, freely available to the general public through federal grants to states and nothing in the CDCP statute authorizes HHS to mandate vaccine usage by citizens or employees through the OSH Act. See <u>Exhibit 13</u>

394.  No federal agency nor any state or local government is authorized by federal or state law to mandate compulsory human or citizen vaccination of any kind.

395.  No immunization nor vaccine for respiratory diseases has ever been approved by OSHA under any regulation as a "authorized safety method, technique, or approach" that can either remove recognized airborne hazards from the workplace atmosphere or to shield employees from exposure to any recognized airborne hazard in the workplace, including for the airborne Covid-19 hazard.

396.    Immunizations or vaccines (including the Covid-19 vaccine) are never "necessary" to protect the health and safety of others in the workplace because vaccines do not and are not capable of removing airborne hazards, like the Covid-19 virus hazard, from the workplace atmosphere and neither do vaccines shield employees from exposure to the Covid-19 virus hazard while in the workplace and therefore, vaccines cannot stop the transmission of deadly airborne hazards like Covid-19 in the workplace. See Affidavit of Expert Dr. Baxter Montgomery, Dr. McCullough

397.    Nothing in Section 20(a)(5) of the OSHA Act requires employees to explain their religious beliefs or provide a clergy letter in order to object to any immunization/vaccine or medical treatment and to obtain an exemption from any employer vaccine mandate.


### B. Facts Relevant To Each Plaintiff's Discrimination Claim

398.    Paragraph's 1-397 above are herein incorporated by this reference as if stated in full herein and all references to attached Exhibits are also herein incorporated by this reference as if fully stated in this section of this Complaint in its entirety.

399.    On March 11, 2020, the World Health Organization declared the infectious airborne Covid-19 virus a Global Pandemic.

400.    According to the Centers for Disease Control (CDC), the Covid-19 airborne viral hazard can cause serious physical injury and/or death.

401.    Also, according to the CDC, the principal mode by which people are infected with the virus is through exposure to respiratory fluids carrying infectious virus, which exposure occurs in three principal ways: (1) inhalation of very fine airborne respiratory droplets and aerosol particles (e.g., quiet breathing, speaking, singing, exercise, coughing, sneezing) in the form of droplets across a spectrum of sizes that are in the atmosphere, (2) deposition of respiratory droplets and

particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled with virus on them.

402.  On March 2, 2020, Governor Andrew Cuomo issued Executive Order No. 202[4], extended by Executive Order No. 202.28, that temporarily modified PHL § 225 such that the New York State Department of Health Commissioner can promulgate emergency regulations ("Emergency Orders or EO") and to amend the State Sanitary Code.

403.  On August 18, 2021, the New York State Department of Health (NYSDOH) Commissioner issued an Executive Order Public Health Law (PHL) §16 requiring Covered Entities[5] to "continuously require covered personnel to be fully vaccinated against Covid-19 with the first dose for current personnel to be received by September 27, 2021." (the "Covid-19 Vaccine Mandate) See PHL §16 attached the Petition as Exhibit 14

404.  PHL §16 (c)(2) lists "religious exemptions" as one of the "Limited exemptions to vaccination" along with medical exemptions. Id.

405.  Defendants are "Covered Entity" defined in PHL §16 regulated by the Public Health Laws subject to all NYSDOH Emergency Orders.

406.  On August 26, 2021, the NYSDOH Commissioner repealed PHL §16 and issued PHL §2.61 titled "Prevention of COVID-19 Transmission by Covered Entities" to supersede PHL §16 to add more detailed instructions for Covered Entities regarding the vaccine requirements for covered employees. See Exhibit 15 PHL §2.61

407.  On November 24, 2021, PHL §2.61 was amended and it included Subsection (d) titled "Exemptions" wherein it no longer lists religious exemptions for covered employees; rather the

---

[4] See Executive Order 202 at https://www.governor.ny.gov/sites/default/files/atoms/files/EO_202.pdf
[5] PHL § 16 defines Covered entity as a general hospital or nursing home pursuant to Section 2801of the Public Health Law – see See PHL § 16   at - https://www.gnyha.org/wp-content/uploads/2021/08/Order-for-Summary-Action-in-the-Matter-of-Covered-Entities-in-the-Prevention-and-Control-of-the-2019-Novel-Coronavirus-DOH.pdf

updated EO expanded the requirements for granting only medical exemptions. See <u>Exhibit 16</u>, Page 3

408. However, on page 13 of PHL §2.61 under the "Regulatory Impact Statement" under subsection "Duplication" it states as follows:

**"This regulation will not conflict with any state or federal rules**."

409. On Page 22 of PHL §2.61 under the "Job Impact Statement" under subsection "Nature of Impact" the New York State Public Health Law gives regulated hospital entities permission to violate the OSH Act's ban on the discharge of employees for exercising their right to object to employer mandated medical treatments as stated as follows:

> Covered entities **may terminate** personnel who are not fully vaccinated and do not have a valid medical exemption and are unable to otherwise ensure individuals are not engaged in patient/resident care or expose other covered personnel. (Emphasis added)
> See <u>Exhibit 16</u>, Page 22

410. While PHL §2.61 does not "mandate" nor "require" Covered Entities to terminate employees who remain unvaccinated in order for Covered Entities to be in compliance with PHL §2.61, the statute gives Covered Entities "permission" to terminate personnel who are not fully vaccinated based on the Covered Entities discretion in violation of the OSH Act ban on wrongful discharge of employees who exercise their OSHA right to object to Medical Treatment as defined further below.

411. On October 28, 2021, the Commissioner issued EO PHL § 405.11 to require hospitals to maintain a supply of PPE, specifically N95 respirator masks that are 99.7% effective in protecting workers and the public from exposure to any airborne hazard. See § 405.11 attached to Petition as <u>Exhibit 17</u>.

412. Sometime after the NYS Department of Health Commissioner issued the first August 18, 2021 Covid-19 Vaccine Mandate law, all Defendants mandated that each employee comply with the

NYS Covid-19 mandate and to take the Covid-19 vaccine as part of Defendant's employment policy.

413. All Defendants knew that NYS mandated Covid-19 vaccines for the healthcare industry was not one of the OSHA approved safety methods under the Respiratory Safety Method Standard to be used by employers to prevent transmission of the airborne Covid-19 viral hazard in the workplace.

414. All Defendants knew that enforcement of the NYS Covid Vaccine Mandate and the termination of employees who did not comply with the NYS Covid Vaccine Mandate would violate the federal OSH Act standards, rules, regulations or orders.

415. At all times prior to August 18, 2021, all Defendants had an employment practice of exempting employees who objected on religious ground to any Defendant offered or requested vaccination of an employee and each Defendant did not terminate any employee who objected to any offered vaccination in the past.

416. Sometime after the September 18, 2021, each Plaintiff submitted to their respective Defendant employer a written request to be exempted from the NYS Covid-19 Vaccine Mandate and/or Defendant employer Covid-19 Vaccine mandate based on some religious grounds. ("Religious Objection").

417. All Defendants refused to grant each of their respective Plaintiff employee(s) an exemption from taking the NYS Mandated and/or Defendant employer mandated Covid-19 Vaccine as required by 29 U.S.C. §668 Sec. 20(a)(5) of the OSH Act.

418. All Defendants terminated each respective Plaintiff employee(s) for exercising their right under the OSH Act in Sec. 20(a)(5) to object to taking the Covid-19 vaccine/immunization which is also protected by the First Amendment Free Exercise Clause and the 14th Amendment substantive due process clause.

419.   All Defendants also failed to inform each their Plaintiff employee(s) that they had the right under the OSH Act in Sec. 20(a)(5) to object to taking the Covid-19 vaccine medical treatment.

### FIRST CAUSE OF ACTION
### WRONGFUL DISCHARGE UNDER THE OSH ACT
### (29 U.S.C. §660 Section 11(c) & 29 U.S.C. §669 Sec. 20(a)(5)

### A.  OSH Act Prohibits Violations of Statutory Rights

421.   Plaintiffs repeat, reiterate, and realleges each and every allegation in the Statement of facts and descriptions of Plaintiffs above in paragraphs 1-420, which all statements and referenced exhibits are incorporated herein by this reference.

422.   Each Defendants refused to grant each respective Plaintiff employee an exemption from the Covid-19 Vaccine mandate in violation of 29 U.S.C. §669 Sec. 20(a)(5).

423.   Each Defendant terminated each respective Plaintiff employee for exercising their right to object to the Covid-19 vaccine provided in Sec. 20(a)(5), which termination was in violation of 29 U.S.C. § 660 Section 11(c)(1) which bans discharge of employees for exercising their OSHA rights.

424.   Each Defendant knew that vaccines did not comply with the OSH Act Respiratory Safety Method Standard and that the Covid-19 vaccine could not stop the transmission of the airborne Covid-19 in the atmosphere of the each Defendant workplace and enforced the mandate with blatant disregard for the OSH Act right of each Plaintiff to object and therefore, Plaintiffs are entitled to punitive damages pursuant to 29 U.S.C. § 660 Section 11(c)(1) subjects Defendant to liability for all appropriate relief including rehiring, reinstatement to the Plaintiff's former position with back pay, consequential damages and punitive damages.[6]

---

[6] See *Reich v. Cambridgeport Air Systems, Inc*., 26 F.3d 1187, 1190 (1st Cir. 1994) (We cannot find, therefore, in the legislative history of the OSH Act any "clear direction" that the term "all appropriate relief" was intended to

### SECOND CAUSE OF ACTION
**Conspiracy Claim under 42 U.S.C. §1983 to Deprive Plaintiffs Rights Under OSH ACT and the First Amendment Free Exercise Clause and Fourteenth Amendment Substantive Due Process Clause**

425.　Plaintiffs repeats, reiterate, and reallege each and every allegation above in Paragraphs 1-424 and incorporates all statements and exhibits herein by this reference.

426.　The First Amendment Free Exercise Clause and the 14th Amendment substantive due process clause provides all citizens and Plaintiffs fundamental right to refuse government and employer mandated medical treatment, including the Covid-19 vaccine medical treatment, as part of a persons and Plaintiffs religious practices and said fundamental right to refuse medical treatments including immunization or vaccination is protected by the federal OSH Act at 29 U.S.C. §669 Sec. 20(a)(5).

427.　Defendants knew or should have known that the New York State PHL §2.61 Covid-19 Mandate violated federal law, specifically the OSH Act Sections 20(a)(5) and that their termination of their respective Plaintiffs violated the OSH Act Section 11 (c) and violated the First Amendment Free Exercise Clause and Fourteenth Amendment substantive due process clause. See *Health and Hospital Corporation of Marion County et al. v. Talevski*

428.　Defendants agreed, cooperated, participated, and conspired to assist in the enforcement of the State of New York's unlawful deprivation of Plaintiffs OSH Act right to object to the Covid-19 Medical Treatment and remain in her job by enforcing the requirements of New York PHL §2.61, which required Covered Entities to "continuously require" personnel to be fully vaccinated against Covid-19 and then terminating Plaintiff pursuant to the "termination" right granted in PHL §2.61.

---

deny to the courts remedial powers to award compensatory and punitive damages in a cause of action analogous to an intentional tort.

429. The State of New York, while acting under color of state law, enacted PHL §2.61 as a hospital regulation that violated the OSH Act Medical Treatment ban that Defendant all Defendants complied with and resulted in the termination of Plaintiffs for exercising their rights under the OSH Act and First Amendment Free Exercise Clause right to object to the New York State Vaccine mandate under PHL §2.61.

430. Defendants acting jointly with the State of New York Department of Health agreed to deprive Plaintiffs of their OSH Act and First Amendment Right to object to the Covid-19 Mandate when all Defendants knew or should have known, based on the sworn testimony of Dr. McCullough, Dr. Montgomery and Expert Bruce Miller, that all vaccines, including the Covid-19 vaccine, are never medically necessary to prevent or mitigate the spread of any airborne communicable hazard in the workplace and therefore, the State of New York had no compelling interest for mandating Defendants to mandate their Plaintiff employees to take the Covid-10 mandatory vaccination.

431. The Covid-19 vaccine could never meet the State of New York's public policy objective of slowing the rates of Covid-19 infections because the Covid-19 vaccine cannot prevent the transmission of the disease because vaccines cannot shield employees from exposure to the airborne hazard in the workplace and neither can the vaccine remove the Covid-airborne virus from the atmosphere in the workplace.

432. Because the New York State PHL §2.61 states that New York hospitals, including Defendants, "may terminate" unvaccinated employees and did not mandate the termination of employees, all Defendants had the discretionary power to not each Defendants Plaintiff employee; but Defendants under "color of law" "willfully" terminated their respective Plaintiff employees in violation of the OSH Act subjecting Defendants to punitive damages.

## CLASS CLAIM

433. Plaintiffs realleges and incorporates by reference Paragraphs 1-432 of this Amended Complaint as if fully set forth herein.

434. Class representative Plaintiffs**,** seek class certification pursuant to Fed. R.Civ.P. 23(a), Fed.R.Civ.P. 23(b)(1)((A), to Fed.R.Civ.P. Rules 23(b)(3) to pursue claims for damages, and on behalf of themselves and all persons similarly situated.

435. The Class claims are appropriate under Fed.R.Civ.P. 23(b)(1)((A) because prosecuting separate actions by the Plaintiffs against the City would create a risk of inconsistent or varying adjudications with respect to the individual class members that would establish incompatible standards of conduct for the party opposing the class.

436. The Class claims raise numerous common questions of fact or law, including, but not limited to:

  a.  Whether the NYS Covid-19 Vaccine PHL §2.61 was preempted by the OSH Act because the Vaccine Orders are a "workplace safety" mandate for healthcare workers to submit to take a Covid-19 vaccine that does not meet the OSH Act minimum Respiratory Safety Method Standards and does not meet NYS larger public health goal of stopping the spread of the Covid-19 infection and stopping serious injury and death caused by the Covid-19 airborne hazard;

  b.  Whether Plaintiffs have a fundamental First Amendment Free Exercise right to object to taking any government or employer mandated medical treatment, including vaccines and the Covid-19 vaccine based on Plaintiffs individual religious practices, and whether such right is also protected by the OSH Act at 29 U.S.C. §669 Sec. 20(a)(5), so long as said right is not criminalized by an state statute.

c.    Whether the terminations of Plaintiffs for refusing to take the Covid-19 vaccine based on religious grounds violates the OSH Act, the First Amendment Free Exercise and Fourteen Amendment substantive Due Process liberty right pursuant to 42 U.S.C. §1983;

d.    Whether Plaintiffs have a private right of action against Defendants without having to exhaust any administrative remedies pursuant to the OSH Act at 29 U.S.C. §660 Sec. 11(c)(1) & (c)(2) and pursuant to 42 U.S.C. §1983 .

12.    Class Certification is also appropriate under Federal Rules of Civil Procedure 23(b)(3) because the common issues identified above will predominate over any purely individual issues. Moreover, a class action is superior to other means for fairly and efficiently adjudicating the controversy.

13.    The claims of the named Plaintiffs are typical of the claims of the class in that the named Plaintiffs and class members claim that their right to a safe workplace pursuant to OSHA standards have been denied by City's reckless disregard to disclose to Plaintiffs their right to remote work and/or Respiratory Protections provided under OSHA Standards and subsequent denial of their right to exercise their religious practice of abstaining from the Covid-19 vaccine and keep their job in violation of the First Amendment and the New York City Human Rights Law.

14.    The named Plaintiffs claim that they were forced to seek explain their faith and/or religious beliefs subjecting them to harassing interrogations regarding their religious practice of abstaining from the Covid-19 vaccine and subjected them to religious discrimination.

15.    Thus, the named Plaintiffs have the same interests and have suffered the same type of damages as the class members, namely loss wages and benefits for being placed on leave without pay due to their refusal to submit to the Vaccine Orders

## REMEDIES

a.  Plaintiffs seek for themselves individually and for those similarly situated, immediate reinstatement to her position with any pay increases given to the position, with the same seniority and benefits.

b.  Back pay with lost vacation, sick and/or personal leave pay since termination;

c.  Lost retirement matching by Defendant during the period of unemployment;

d.  Reinstatement of years toward retirement;

e.   Compensatory damages;

f.  Punitive damages in an amount to be determined by a jury pursuant the OSH Act ; and

g.  Attorney fees, costs and any other available remedy.


Dated: January 24, 2025                      Respectfully submitted,


                                             /s/ *Tricia S. Lindsay*
                                             Tricia S. Lindsay, Esq.
                                             531 E. Lincoln Ave., Suite 5B
                                             Mount Vernon, New York 10552
                                             ph:  860-783-8877
                                             fax:  914-840-1196
                                             email: TriciaLindsayLaw@gmail.com